THE UNION INSURANCE COMPANY OF PHILADELPHIA and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Respondents, v. THE CENTRAL TRUST COMPANY OF NEW YORK and THE CONTINENTAL INSURANCE COMPANY OF THE CITY OF NEW YORK, Appellants, Impleaded with KATE E. DIMICK, as Executrix of LORENZO DIMICK, Deceased.

1. MULTIPARTITE CONTRACT. Each party to a multipartite contract is bound only to the extent of the promises, express or implied, made by him.

2. ARBITRATION — QUADRIPARTITE AGREEMENT OF SUBMISSION — REVOCATION — PLEDGE TO SECURE AWARD — FORECLOSURE. Where a quadripartite agreement of submission to arbitration requires a deposit in behalf of the fourth party for the benefit of the first and second parties to secure payment of award covenanted to be paid, without expressly providing by whom the deposit is to be made, and the third party deposits his own property in behalf of the fourth party for the purpose of the agreement, the first and second parties, on the revocation of the submission by the fourth party, may maintain an action in the nature of a proceeding *in rem* to foreclose a pledge, for the payment, by a sale of the deposited property, of the costs, expenses and damages incurred by them in preparing for and conducting the arbitration.

3. RECOVERY OF DAMAGES FOR REVOCATION OF SUBMISSION. The Code of Civil Procedure (§§ 2384, 2385) does not place a limitation upon the right of action at common law to recover damages for the revocation of a submission to arbitration, except by limiting the amount of the recovery to the measure of damages fixed by the statute, namely, the costs, expenses and damages incurred in preparing the proceeding and in conducting it to the time of revocation.

4. COVENANT TO PAY AWARD BROKEN BY REVOCATION. When a party to a submission agreement, in which he has covenanted to pay the award, revokes the submission and so prevents an award, this is itself a breach of the covenant; and if, under the terms of the agreement, a pledge has been deposited for him to secure payment of the award, the condition of

the pledge is broken by his rendering its performance impossible, and the pledge may be foreclosed to the extent of the damages allowed by the statute on revocation of a submisison.

5. PROVISION OF SUBMISSION AGREEMENT AS TO EXPENSES OF ARBITRATION. The presence, in a submission agreement, contemplating an award and not a revocation, of a provision that the fees of arbitrators and witnesses shall be paid equally by the parties, and that no part of the costs of the arbitration or the expenses of witnesses shall be recovered by the prevailing party or entered in the judgment, does not prevent the recovery of expenses incurred in preparing for and conducting the arbitration, as allowed by statute, in case an award is prevented by revocation.

*Union Ins. Co.* v. *Central Trust Co.*, 87 Hun, 140, affirmed.

(Argued December 2, 1898; decided January 10, 1899.)

APPEAL from a judgment of the late General Term of the Supreme Court in the first judicial department, entered May 31, 1895, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

On the 10th of October, 1885, a quadripartite agreement was entered into between the Union Insurance Company, party of the first part, the Insurance Company of the State of Pennsylvania, party of the second part, the Continental Insurance Company, party of the third part, and Lorenzo Dimick, party of the fourth part, which, after reciting the existence of certain controversies between the parties of the first and second parts and the parties of the third and fourth parts, arising chiefly out of the dealings of said Dimick and his firm in the affairs of said parties, and that certain civil actions were pending between the parties of the first and second parts respectively, and the parties of the third and fourth parts, provided that all the matters embraced in said actions, as well as all other actions or causes of action pending or existing between the parties of the first and second parts, or either of them, and the party of the third part and the party of the fourth part, individually or as a member of the firm of Crosby & Dimick, or either of them, and all claims of the party of the third part and the party of the fourth part respectively, against the party of the first part and the party of the second part respectively, and of the party of the third

part against the party of the fourth part and *vice versa*, should be submitted to three arbitrators, two of whom were named and authorized to appoint the third.

It was further agreed that a judgment might be entered in the Supreme Court upon the award, and that such award should be final and without right of review by appeal or otherwise by either of the parties, who expressly waived " any and all right under the statute or otherwise to apply to the court in any manner or on any ground to stay or prevent entry of an order of confirmation or entry of judgment upon such award." It was further provided that neither of the parties should " have the right to revoke the submission to arbitrators herein provided for, or this agreement or any part thereof, and such arbitration shall not terminate or be revoked by the dissolution or death of either or any of the parties hereto." In case of the dissolution or death of any party, proceedings under the submission were to continue against the personal representatives or successors, " and any revocation by operation of law, and any and all right of revocation given or permitted by statute or otherwise," was " expressly waived and abandoned." The compensation and expenses of the arbitrators and the expenses of witnesses were to be borne equally by the parties, each paying one-fourth thereof, " the same to be advanced from time to time in the proportion above mentioned, upon the certificate of the arbitrators or a majority of them; the expenses of witnesses to be adjusted and allowed by the arbitrators or a majority of them." The compensation of the arbitrators was fixed at $50 a day, but was not to exceed the sum of $5,000 to each, in the aggregate. No part of the costs or expenses of the arbitration or of the witnesses was to be recovered by the prevailing party or parties or entered in the judgment, and any limitation by statute as to the rate of such compensation was waived.

The agreement further provided " that at or before the execution and delivery of this agreement there shall be deposited with the Central Trust Company of the city of New York security satisfactory to the parties of the first and second parts,

to the amount of $50,000, to secure the payment, performance and satisfaction of any award in favor of said parties of the first and second parts, or either of them, that may be made against said Dimick in said arbitration by said arbitrators, or a majority of them; payment and satisfaction of said award, up to said amount of $50,000, to be paid upon demand by said Central Trust Company of New York, in accordance with any judgment that may be entered upon such award."

The parties of the first and second parts each agreed to discontinue all civil actions pending in their favor, or in favor of either of them, against the parties of the third and fourth parts, or either of them, and it was provided that if said actions were not thus discontinued said security might at once be withdrawn.

This agreement was executed in quadruplicate, by said Dimick, October 10, 1885, by the Union and State Companies respectively, October 14, 1885, and by the Continental, October 17, 1885. On the 13th of October, 1885, the Continental Company deposited with the Central Trust Company a certificate for five hundred shares of Harlem Railroad stock, which was accepted instead of the $50,000 in cash required by the agreement, and the trust company gave a receipt to the plaintiffs, dated on the same day, stating that said shares were to be held in accordance with the terms of said agreement.

On the 18th of October, 1887, after the arbitration had proceeded for about two years, and before it was closed or the matters in controversy submitted to the arbitrators for decision, said Dimick revoked the arbitration, and such revocation was subsequently adjudged to be in all respects valid and conclusive. (*People ex rel. Union Insurance Company* v. *Nash,* 111 N. Y. 310.)

The complaint, after setting forth the foregoing facts in substance, further alleged that the plaintiffs had incurred costs and expenses, and had suffered damages in preparing for the arbitration and in conducting the proceedings thereunder to the time of the revocation, exceeding the sum of $50,000.

The wife and executrix of said Dimick was made a party to the action, he having died on the 29th of February, 1888. The Central Trust Company was not a party to the agreement, but is a party to the action. The relief demanded was that the said stock should be sold, the rights and interests of the parties therein determined, and that the plaintiffs be paid out of the proceeds " the amount of their costs, expenses and damages incurred and suffered as aforesaid."

Upon the trial of the action at Special Term it was held that the plaintiffs' costs, expenses and damages incurred in preparing for the arbitration should be allowed to the amount of $49,178.45 ; that the shares of stock in question were subject to a charge in favor of the plaintiffs for the payment to them of that sum ; that the Central Trust Company should sell the stock and out of the proceeds pay said sum to the plaintiffs, with leave to the Continental Company, or its assigns, at any time prior to the sale, to redeem said stock by the payment of said sum to the plaintiffs. The judgment entered accordingly was affirmed on appeal to the General Term and the defendants came here.

*William Allen Butler, John Notman* and *William C. Trull* for appellants. By the plain terms of the agreement of submission the required deposit of $50,000 was solely to secure payment, performance and satisfaction of any award in favor of the plaintiffs against Dimick in accordance with any judgment that might be entered upon such award. (*Schoonmaker* v. *Hoyt,* 148 N. Y. 425 ; *Moore* v. *Cockcroft,* 4 Duer, 133 ; *D. & H. C. Co.* v. *P. C. Co.,* 50 N. Y. 250 ; *Sweet* v. *Morrison,* 116 N. Y. 19 ; *Oakley* v. *Morton,* 11 N. Y. 25.) While the revocation by Dimick was a breach of the agreement of submission, it entailed no other consequence than to give the aggrieved parties an action for damages against him, and gave plaintiffs no claim on the fund deposited to secure payment of any award and judgment. (*People ex rel.* v. *Nash,* 111 N. Y. 310 ; *Brown* v. *Tanner,* M'Cl. & Y. 464 ; *Warburton* v. *Storr,* 6 D. & R. 213 ; *Milne* v. *Gratrix,* 7

East, 607 ; *King* v. *Joseph*, 5 Taunt. 452.) The plaintiffs' contention, that whether the deposit clause in the agreement of submission is treated as a part of that instrument, or as collateral thereto, or by way of suretyship, it is, in any case, the equivalent of a bond to perform the award, the penalty of which was recoverable in case of revocation of the submission, is untenable. ( *Vynior's Case*, 4 Coke, 302 ; *Allen* v. *Watson*, 16 Johns. 205 ; *Brown* v. *Tanner*, 1 C. & P. 654.) Treated as a collateral agreement the terms of the deposit clause under which the stock was deposited with the Central Trust Company as security for the payment of any award, if regarded as constituting a suretyship engagement, cannot be enlarged or extended. ( *Ward* v. *Stahl*, 81 N. Y. 406 ; *N. M. B. Assn.* v. *Conkling*, 90 N. Y. 116 ; *People* v. *Backus*, 117 N. Y. 196 ; *J. H. M. L. Ins. Co.* v. *Lowenberg*, 120 N. Y. 44.)

*Treadwell Cleveland, William V. Rowe* and *Hood Gilpin* for respondents. The provisions of the Code of Civil Procedure create no new remedy and are merely declaratory of the pre-existing law. The security deposited is, in law, and so far as the liability in question is concerned, the precise equivalent of a personal surety, or of the penalty of a bond, to secure performance of the award. (Code Civ. Pro. §§ 2384, 2385 ; 2 R. S. 544, 545, §§ 23–25 ; *Allen* v. *Watson*, 16 Johns. 205 ; *Gray* v. *Crosby*, 18 Johns. 219 ; Suth. on Stat. Const. § 202 ; Sedg. on Const. of Stat. & Const. Law, 29, 30 ; 2 Coke's Inst. 200 ; Bishop on Written Laws, § 164.) The revocation of a submission, by making performance of an award impossible, creates a cause of action against the party revoking, for breach of contract, and forfeits all penalties conditioned to secure performance of the award. ( *Hochster* v. *De La Tour*, 2 El. & Bl. 678 ; *Roper* v. *Johnson*, L. R. [8 C. P.] 167 ; *Johnstone* v. *Milling*, L. R. [16 Q. B. D.] 460 ; *Synge* v. *Synge*, L. R. [1 Q. B. D. 1894] 466 ; *Frost* v. *Knight*, L. R. [7 Exch.] 111 ; *Warburton* v. *Storr*, 4 B. & C. 103 ; *Brown* v. *Leavitt*, 26 Me. 257 ; *Frost* v. *Clarkson*, 7 Cow. 24 ; *Crist* v. *Armour*, 34 Barb. 378 ; *Burtis* v.

*Thompson*, 42 N. Y. 246.)  This breach of contract by Dimick, the principal, necessarily, at the same time, bound and made liable his surety and all securities deposited to secure performance.  (Jones on Pledges, § 603 ; Colebrooke on Col. Sec. [2d ed.] 202, § 111 ; *People ex rel.* v. *Nash*, 111 N. Y. 314 ; 1 Brandt on Suretyship [2d ed.], 34, 35 ; *Ferris* v. *Spooner*, 102 N. Y. 10.)

VANN, J.   Each party to the submission agreement, which was quadripartite in character, was bound only to the extent of the promises, express or implied, made by them respectively. (*Berry Harvester Co.* v. *Walter A. Wood Co.*, 152 N. Y. 540.)

While the contract required a deposit to be made in behalf of Dimick for the benefit of the plaintiffs, it did not expressly provide by whom it was to be made.  The object of the deposit was to secure performance of any award against Dimick in favor of the plaintiffs, or either of them.  It was not to secure performance by him of the arbitration agreement, generally, but simply of that part relating to payment of the award.  Every other covenant, by whomsoever made, stood without security.  The deposit bore no relation to any part of the agreement other than that pertaining to satisfaction of the award by Dimick, except the provision that unless the pending actions were discontinued the security might be withdrawn.   In making the deposit, therefore, the Continental Company pledged its property for the purpose of securing payment by Dimick of any award made against him in favor of the Union and State Companies, which thereupon became the pledgees, the Continental Company the pledgor, and the trust company the holder of the pledge in trust for the purpose aforesaid.  As the object of the pledge was to secure performance of a certain act by Dimick, while the subject of the pledge belonged to the Continental Company, the latter became entitled to the rights of a surety with reference to the thing pledged, although it was not subject to the affirmative obligations of a surety, for it made no promise to perform for another, but simply deposited its property to secure fulfillment

of a specified act by another upon a contingency named for the benefit of third parties. It was not a surety in the sense of one who had engaged to answer for the debt, default or miscarriage of another, and it was not sued as a surety. No affirmative relief was asked and no personal claim made against it. This action, therefore, is, in effect, a proceeding *in rem* to foreclose the pledge by securing a sale of the thing pledged for the benefit of the plaintiffs.

It is claimed by the defendants that the submission agreement furnishes no basis for such an action, because the condition of the pledge has not been broken. As the condition of the pledge was the payment of the award, they insist that an actual award was a condition precedent to the right to foreclose, and as there has been no award and none can now be made, the agreement to pledge is *functus officio*, and the trust company is under an implied obligation to return the thing pledged to its owner.

On the other hand, the plaintiffs claim that this action can be maintained under section 2384 of the Code of Civil Procedure, "in connection with well-settled common-law principles, as one based either upon the terms of the submission as a whole," or that part thereof which provided for the deposit. The section referred to is found in that part of the Code relating to arbitrations, and is as follows: "Liability of party who revokes. Where a party expressly revokes a submission, made either as prescribed in this title or otherwise, any other party to the submission may maintain an action against him, and also against his sureties, if any, upon the submission, or any instrument collateral thereto, in which action the plaintiff may recover all the costs and other expenses, and all the damages, which he has incurred in preparing for the arbitration, and in conducting the proceedings to the time of the revocation. Either of the arbitrators may recover, in an action against the revoking party, his reasonable fees and expenses." (§ 2384.)

The next section provides that "a sum, penalty, forfeiture, or damages, shall not be recovered for a revocation of a submission to arbitration, made either as prescribed in this title or

otherwise, except as prescribed in the last section; notwithstanding any stipulated damages, penalty, or forfeiture, expressed in the submission, or in any instrument collateral thereto."

The first section quoted authorizes an action against one who revokes a submission, and also against his sureties upon the submission, as well as against his sureties upon any instrument collateral to the submission, to recover all the costs and other expenses, and all the damages incurred in preparing for and conducting the proceedings to the time of revocation, and the second section limits the recovery to such costs, expenses and damages, even if the submission provides for a more extended recovery. These sections reproduce in substance similar provisions contained in the Revised Statutes. (2 R. S. 544, 545, §§ 23, 25.) Before the passage of the Revised Statutes it had been held in *Allen* v. *Watson* (16 Johns. 204) that a party could revoke the powers conferred by an arbitration bond, but the consequence was a forfeiture of the penalty, although the other party could recover no more than the actual damages sustained. The revisers, in their notes, refer to this case, and state that it was deemed useful to finally settle " the much agitated question respecting stipulated damages which are frequently inserted in submissions to avoid the general rule of law concerning penalties." Otherwise a resort to equity would have been necessary to obtain relief from the forfeiture. We think this is what the Code accomplishes, and that it does not place a limitation upon the right of action at common law to recover damages for revocation, except by limiting the amount of the recovery. It creates no new or exclusive remedy, but confirms an old one, and fixes the measure of damages.

The act of revocation by Dimick made the condition upon which the deposit was made impossible of performance. He thereupon became liable, not for an award, but for the expenses incurred in the effort to secure an award, which were rendered of no effect by his act. He voluntarily disabled himself from performing his covenant to pay the award, and that, according to the authorities, was in itself a breach of the covenant.

81

The earliest authority upon the subject is the celebrated *Vynior's Case* (4 Coke, 302), where the condition of an arbitration bond was "to stand to, abide by and perform an award." The only breach by the defendant was a revocation of the authority of the arbitrators. It was resolved that the defendant by his own act "made the condition of the bond impossible to be performed and by consequence his bond is become single and without the benefit or help of any condition, because he has disabled himself to perform the condition." This has been followed for many years and has been made the basis of a multitude of judgments both in England and in this country. Thus, in *Warburton* v. *Storr* (4 Barn. & C. 103, 106) the defendant agreed, under a penalty, to perform an award, and by revocation of the submission prevented himself from doing so, but he was held to have broken his agreement and thereby to have subjected himself to an action for the penalty. *Vynior's* case is the only one cited, and the court, relying upon it, said, "that if a party covenants to do a certain thing, and afterwards, by his own act, disables himself from performing it, that is, in itself, a breach of the covenant." So in *Brown* v. *Tanner* (1 M'Cl. & Younge's Reports, 464) it was held that the defendant's revocation of his submission, whereby the performance of his agreement to stand to, obey, abide and fulfill the award became impossible, was a breach of that agreement.

In *Town of Craftsbury* v. *Hill* (28 Vt. 763) the condition of an arbitration bond was that if the principal should "well and truly observe, perform and keep the award and determination which the said arbitrators shall make and publish," the obligation was to be void. The only breach of the condition alleged was a revocation of the submission, and it was held on demurrer that it was a breach of the submission because the principal had deprived the arbitrators of the power to make an award as well as himself of the power to observe, perform and keep it, and that this in legal effect was a forfeiture of the bond and a breach of the condition, rendering both principal and surety liable.

Where a defendant, by preventing one of three referees from acting with the others, defeated any valid award, it was held to be a sufficient breach of an agreement for having and perfecting a reference. (*Quimby* v. *Melvin*, 28 N. H. 250.)

In *Brown* v. *Leavitt* (26 Me. 251, 256) the court said: "It is a general rule that any party or any one of a party may revoke his submission before award made, giving notice thereof to the arbitrators, but then he forfeits his obligation he has given to abide the award. (1 Danes Abr. 277, c. 13, art. 14, § 15; *Milne* v. *Gratrix*, 7 East, 608; *King* v. *Joseph*, 5 Taunt. 452.) * * * It is a well-established rule of law that if a party covenants to do a certain thing, and afterwards by his own act disables himself from doing so, or declines doing it when he was able, it is a breach of the covenant." (Citing *Vynior's* case and *Warburton* v. *Storr*.)

The principle is not confined to agreements of submission, but is applied to contracts generally, and the rule is universally recognized that where a party, before the time of performance arrives, puts it out of his power to keep his contract, there is an immediate right of action for a breach of that contract by anticipation. (*Hochster* v. *De la Tour*, 2 E. & B. 678; *Frost* v. *Knight*, L. R. [7 Exch.] 111, 114; *Synge* v. *Synge*, L. R. [1 Q. B. Div. 1894] 466; *Johnstone* v. *Milling*, L. R. [16 Q. B. Div.] 460; *Crist* v. *Armour*, 34 Barb. 378; *Burtis* v. *Thompson*, 42 N. Y. 246; *Howard* v. *Daly*, 61 N. Y. 362, 375; *Ferris* v. *Spooner*, 102 N. Y. 10; *Nichols* v. *Scranton Steel Co.*, 137 N. Y. 471, 485.)

In *Frets* v. *Frets* (1 Cow. 335, 341) a bond in fact given for the performance of an award contained no condition. One of the parties revoked, and it was declared that "by the revocation, the penalty of the bond is forfeited, and an action lies upon it to recover the damages actually sustained."

In Russell on Arbitrators (p. 100) it is laid down that "every submission contains some words expressing or implying the agreement of the parties to abide by and perform the award of the arbitrator. Preventing the award being made is a breach of this agreement as much as not performing it

when made, and when the submission is by bond is a forfeiture of the penalty."

In the case before us the pledge was made to secure performance by Dimick, and as he failed to perform by depriving himself of the power to perform, he broke the condition upon which the pledge was made. As was said in *Ferris* v. *Spooner* (*supra*), where property was pledged for performance by a party, "when he repudiated the further performance of the contract, the plaintiff was   *   *   *   set at liberty to enforce his securities."

If he had furnished sureties for the performance of an award they would have been liable, because revocation prevented an award and constituted a breach of the promise to perform. This would be true even if the promise of the sureties was limited to payment of the award and did not apply to any other part of the agreement of submission, because by voluntarily preventing an award he virtually broke the agreement to perform the award. He was "bound to stand to the award," and when he made an award impossible and disabled himself from performing the condition of the pledge, he thereby broke the condition itself. We have a pledge as security in place of personal sureties. The pledge is to secure performance of an award when made. If there had been no revocation and an award had been made to the plaintiffs of $50,000, they could have proceeded against the subject of the pledge by an action to foreclose their lien thereon, to procure a sale thereof and payment of their claim out of the proceeds. We have not that exact case before us, which would be an actual breach of the condition on which the pledge was made, but we have its equivalent in an implied breach of that condition, because Dimick intentionally rendered an award impossible. If the five hundred shares of stock could have been sold by proceedings *in rem* founded on an actual award, the same proceedings may be maintained, founded upon that which the authorities regard as having the same effect as a breach of the condition to pay the award. The pledge was to be forfeited upon the making of an award and non-payment thereof, and the pledge

was forfeited by the act of Dimick in making an award impossible. Here the statute comes in and limits the amount of the damages to those caused by the fruitless effort to prepare and try the case and submit it to the arbitrators so that they could pass upon it. We base our decision upon the agreement and the pledge made to secure performance of a part thereof, and the legal consequences resulting upon common-law principles from the disabling act of Dimick in preventing an award, giving effect to the statute as both sanctioning the action and limiting the amount of the recovery.

It is, however, insisted that none of the damages claimed are recoverable in any event, because the agreement of submission prevents it. The items of damages were fixed as to amount by the stipulation of the parties, with no admission, however, of any liability, and the defendants duly objected to the allowance of anything for fees of arbitrators, counsel or witnesses. This position is founded upon the provision of the agreement of submission that the fees of arbitrators and witnesses should be paid equally by the parties, and that no part of the costs of the arbitration or the expenses of witnesses should be recovered by the prevailing party or entered in the judgment. This simply settled what should follow an award when made, and what should be included in the judgment to be entered upon the award. It does not deal with the consequences of revocation nor prevent the recovery of expenses incurred in preparing for the arbitration, as allowed by statute, where an award is prevented by revocation. That wrongful act was not under contemplation by the parties when they provided that costs and expenses should not become part of the judgment, for they had all promised not to revoke in another part of the agreement. They were dealing simply with the award and the judgment to be rendered thereon, and, as was said by one of the learned justices below, "the stipulation relied upon was predicated upon a continuance and completed execution of the agreement. It was, in effect, inconsistent with revocation, and was, therefore, destroyed by revocation." In covenanting against the recovery

of expenses they proceeded upon the theory that the arbitration agreement was to be performed and not revoked, and the argument already made as to breach of the condition through a deliberate act rendering performance impossible applies with equal force to the position taken by the appellants with reference to the allowance of these items of damage. The contingency of a revocation was not provided for by the agreement to submit, but the statute and the common law take care of it. The cause of action arises through the submission, the deposit, the act of revocation and the statute. By revoking Dimick prevented an award and thereby broke his promise to pay the award. At common law he would have been liable for all damages resulting from the breach, including the amount for which an award should have been made, but the statute intervening prevents that result and allows a recovery for the expenses of the arbitration, which it substitutes in the place of all other damages. By preventing an award Dimick became liable for the expenses incurred in trying the case before the arbitrators, because the pledge made to secure the award was forfeited by the act that made an award impossible. By violating his agreement he not only made himself liable but also the property pledged for him. Instead of allowing an absolute forfeiture, however, the statute, which was a part of the contract and is referred to therein, measures the damages as already mentioned. If an award had been made the expenses could not have been recovered, but the plaintiffs would have had the value thereof in an award settling all controversies between the parties. The agreement would then have been enforced as made and any award in favor of the plaintiffs would have been paid out of the proceeds of the pledge not exceeding the limit named. They incurred legitimate expenses in the effort to secure an award, but that effort was defeated by the act of a party, which, as the courts hold, was equivalent to a violation of the condition upon which the pledge was made. The pledge secured the award and Dimick prevented an award, and thereby forfeited the pledge and made it, under the statute, liable for the expenses incurred in

trying to get an award the same as it would have been liable for an award if made. Non-payment of an award would have violated the condition of the pledge no more than a revocation of the submission violated it, and the pledge is liable for all the direct and natural consequences of such violation except as limited by the statute.

Without further discussion we think the judgment appealed from should be affirmed, with costs.

O'BRIEN, J. (dissenting). The judgment in this case appropriates over $50,000 of the defendant's property to satisfy a claim for damages by the plaintiff for the breach of an agreement by one Dimick to arbitrate certain claims and to pay the award. It is admitted that the breach was the act of Dimick, and of him alone, in revoking the submission after the arbitration had been pending over two years. The plaintiff's claim is for the damages sustained by the payment of its expenses of the arbitration while pending, and nothing else. It is not claimed, or even suggested, that the defendant had any power or right to prevent Dimick from revoking the agreement, or that it had any control over his action in that regard. The decision contains another curious but perfectly correct admission, and that is, that the defendant committed no breach of the agreement itself, and was not the surety of the one who did.

With these facts conceded at the outset, the mind is at once directed to the inquiry whether the judgment has any support in law, reason or authority, since, if it has not, the decree which transfers such a large portion of the defendant's property to the plaintiff is but an arbitrary edict and little better than downright confiscation. The discussion of the case up to this time has produced at least five judicial opinions by as many different judges, including the opinion of this court now before us. After reading them all, it is not too much to say that no two of them are at entire agreement upon any clear or definite theory of liability. This discord in opinion and theory is, perhaps, not at all surprising. While the case would

be a very simple one, involving no difficulties whatever, if we would only aim to give effect to the plain and clear language of the agreement which the parties made, it becomes very difficult when we attempt to make a new one, based not upon the language which the parties employed, but upon reasoning processes so subtle and artificial that it is difficult for an ordinary mind to grasp them, and quite impossible for any two persons to state them in the same way. Courts are often astute to defeat fraud and prevent injustice, and sometimes go to the extreme limits of construction in order to compel a party to pay a claim which is just, and which, in the forum of conscience, he ought to pay. With all that, there need be no complaint, but it would require a very acute mind to discover in the plaintiff's claim any such element of equity as would warrant any court in putting a strain upon law, or upon the language in which the parties have carefully expressed their mutual rights and obligations.

It appears upon the face of the agreement that when it was executed various suits at law, in behalf of the plaintiff, were pending in the courts, and by the terms of the submission these suits were to be discontinued and the claims involved therein submitted to the arbitrators. When the arbitration was revoked by the sole act of Dimick, the right to prosecute these actions was revived, and it was admitted at the argument that they had been prosecuted and the claims recovered, as we may assume, with the costs of prosecution. So that while the plaintiff lost the right to have an award of arbitrators, it gained the right to have the judgment of the courts upon the claims. In legal theory it could have lost nothing but the expenses of the arbitration, and in fact it may have gained more than that in the recovery. But nothing can more clearly reveal the want of any strong equity in the plaintiff's claim than the agreement itself. There the plaintiff expressly stipulates that it will pay all of its own expenses and that the defendant shall not, under any circumstances, be liable for them, since they could not be made any part of the award or included in it. The only purpose of this action is to collect

from the defendant's property the very expenses which, by the agreement, the plaintiff was to bear itself, and which it is conceded the defendant never agreed to pay. The parties virtually stipulated with each other that in the event of revocation by one none of the others not participating in that act should claim damages as against each other, but should pay their own costs. They bound each other, so far as words could do it, not to revoke, and in any event to pay their own costs. The railroad stock, which is the subject of this action, was pledged for one purpose and one only, and that was to pay an award when made, and the expenses which the plaintiff now seeks to have declared a lien upon it could never by any possibility become a part of that award. It is conceded that had the plaintiff recovered an award of $10,000, it could not collect a dollar of the expenses of the arbitration from this property, although as large then as now, for the plain reason that it was not pledged for any such purpose. The plaintiff has no more right to appropriate this property for its expenses now than it would then, unless we are to hold that the agreement under which the pledge was made means one thing in case an award was made and another thing in case it was not made, or one thing before revocation and something else after. We must hold that, although the purpose of the pledge was clearly expressed in writing, yet that purpose was subject to be enlarged and changed without the consent of the owner, by future events and contingencies not within the contemplation of the parties when the writing was made and in which the owner was in no manner concerned. The plaintiff is seeking to do now, that there is no award, what it could not do if one had been made, thus profiting by the act of Dimick, since by that act it must have acquired some right against the defendant's property that it did not possess before; or, to state it in another way, the plaintiff's claim is and must be that by the act of Dimick it gained the right to demand costs against this property, and the defendant lost the right to object to that demand. When the judgment in this case is carefully analyzed it virtually declares that during the two years that

the arbitration was pending the defendant's property was pledged to pay an award, since that is the only purpose expressed in the writing, but at the end of that period, by Dimick's act of revocation, it became pledged for something else, that is to say, for the plaintiff's costs and expenses, although the plaintiff agreed to bear them itself, and the defendant who owned the pledge never gave its consent in any form that it should be devoted to any such purpose. When the terms of the instrument under which the defendant's property was deposited are placed in contrast with the provisions of the judgment, it will be difficult to resist the conclusion that the court must have made for the parties a new and different contract.

(1) By the terms of the instrument there was no obligation upon the defendant to deposit its property in pledge for any purpose, but it volunteered to make the deposit for a particular purpose only and that was to pay any award made against Dimick. There was no award made, and it is said that at the end of two years Dimick rendered it impossible by revoking the arbitration. The decision, therefore, is that the defendant's property pledged to pay an award which was never made is forfeited to the plaintiff for another purpose, namely, to pay the costs of the arbitration. But it is said that the plaintiff lost the right to procure an award and should be compensated for that loss. The answer to that is, that the loss of a prospective award is not, since the statute, a legitimate element in the estimation of damages for the breach of an agreement to arbitrate.

(2) Not only were these costs by the terms of the agreement to be excluded from the award, but the plaintiff stipulated to bear and pay them itself. The courts have discharged the plaintiff from the obligation of the agreement to pay its own costs by ordering them to be paid out of the defendant's property.

(3) The most favorable award that the plaintiff could possibly obtain against Dimick was secured by the pledge of the five hundred shares of stock and nothing more. The claims

that it had against Dimick, when reduced to the form of an award, were to be paid out of that as far as it would go, but under the judgment the plaintiff, without any award whatever, gets the stock or its proceeds, not to pay the claims, but to pay the costs of an arbitration, frustrated by the act of Dimick, and it has the judgments upon the claims and costs besides, or the money collected under them.

No review of this case would be fair or just that does not take careful note of the grounds upon which these conclusions rest and the reasoning process from which they have been deduced. It has been often said, upon high authority, that law was the perfection of human reason, and that whatever is contrary to reason is generally contrary to law. If, therefore, it can be shown by any fair reasoning process that the defendant's property has been forfeited to the plaintiff by the act or default of Dimick, then any hasty views or impressions concerning the propositions above stated must at once disappear. It is claimed that these conclusions all rest upon sound reason and well-established legal principles.

1. In the first place, it is said that the judgment rests well upon a statute, that is, upon section 2384 of the Code. The section provides that where a party revokes an arbitration any other party to the submission may maintain an action against him and his sureties upon the agreement, or any instrument collateral thereto, to recover the costs and damages incurred in preparing for the arbitration. Inasmuch as the defendant owning the stock in question, did not revoke the arbitration, and was not surety for Dimick who did, and since there is not any instrument collateral to the agreement of submission, it is very difficult to perceive how this statute can have any application to the case. Dimick was the only one who revoked, but he gave no sureties or collateral instrument. The plaintiff can doubtless proceed against him for breach of his agreement, and then the statute measures the damages. It is admitted on all sides that Dimick or his estate is liable. But the fact that one who broke his agreement is liable in damages for the breach, does not prove that another, who kept the agreement

to the letter, is also liable, or that his property can be taken to pay the costs preceding the revocation. It is quite impossible to say from the various opinions in the case how much or how little of a part this statute is supposed to play in the case. None of the learned judges who have discussed the questions have been willing to rest the case upon it, while it is equally apparent that none of them have felt entirely safe without it. But it is quite obvious that it can give the plaintiff no aid. If the stock was not pledged for the damages arising from Dimick's revocation, then the statute cannot and does not enlarge or change the purpose of the pledge. On the other hand, if it was pledged for that purpose by the agreement, then the plaintiff needs no statute, but may stand upon the instrument itself. The theory of the action is that the plaintiff has a lien upon the stock. Of course it never got any lien except such as arises from the terms of the agreement. That agreement might confer a lien for an award, without costs, when made, but what the plaintiff now claims is a lien for costs alone without any award whatever. Whatever lien the plaintiff had attached immediately on the execution and delivery of the agreement, and the purpose of the pledge was specific and definite. The lien now claimed is one arising from the act of Dimick, committed two years afterwards, and which clearly was not within the contemplation of any of the parties. When and how a lien to pay an award without any costs was transmuted into a lien to pay costs alone, as damages for the act of Dimick, is a problem in the case that no one has yet attempted to solve. This is the critical point in the discussion, and when we reach it, mere assertion and generalization will not answer. We must stop to inquire just how the plaintiff has acquired a lien on this property for the damages arising from Dimick's act in defeating an arbitration that might or might not result in an award against him. No man can get a lien upon or an interest in his neighbor's property except through some contract. Did the defendant ever agree to charge this property with the costs incurred by the plaintiff in the arbitration? If so, how and in what language? When the defendant bound the plaintiff

to bear these very costs and excluded them entirely as an element in the controversy, did it intend or contemplate any such thing as making them a charge on its own property? When the plaintiff covenanted to bear these costs itself, did it then intend or contemplate any such thing as their collection out of the defendant's property? These questions admit of but one answer, and that must prove that the judgment in this case has sought to impress a lien upon the property that the parties never created or intended to create. Obviously the plaintiff got no lien from any agreement of the defendant, express or implied. It got no lien through Dimick, since he never owned it or had it in his possession, or under his control, or even made the deposit. There is no legal privity or connection of any kind between Dimick's act of revocation and the defendant, or the property in question, and so it seems to me that the plaintiff has no lien at all.

The only object of a bond in a submission to arbitration is to secure some one against damages arising from the exercise of the right of revocation, and there can now be no damages but the costs and expenses incurred. In all such cases there is, of course, a privity of contract between the sureties and the injured party. But here we have a wholly different situation, since the parties intended to make, and supposed they had made, an irrevocable agreement of submission, in which damages would be impossible, and then they proceeded to covenant with each other that the costs, now the only element that can constitute damages, should be eliminated from the submission entirely, and each party should bear and pay its own costs, and consequently that neither party should claim damages of the other in case they were mistaken as to the irrevocable character of the contract. It is plain, therefore, that the lien for costs and expenses as damages which the plaintiff claims upon the property in question does not and cannot arise from any contract between the parties. It is a purely artificial development by reasoning processes upon principles derived from what are supposed to be analogous cases, but which really have no application to the special and

peculiar agreement under which the defendant pledged its property. When it made the pledge for a single specified purpose the appropriation of it to another and different purpose is a plain violation of its legal rights.

2. In the opinion of my learned associate now before us it is stated that the plaintiff's stipulation to pay its own costs did not contemplate a revocation of the arbitration, and since that unexpected event happened the stipulation is no longer in the plaintiff's way. That is a very candid admission that the stock in question is to be devoted by the judgment to a purpose not within the intention or contemplation of the parties when they made the agreement. It reveals the fundamental error that has pervaded the case from the beginning. It is perfectly true that the contingency of revocation was not contemplated. The parties were pledged and became bound hand and foot against the happening of any such event, and not until this court held that the binding was of no avail did any one attempt to give to the agreement a construction which the parties never intended that it should have. The construction now is that the defendant pledged its property to secure a claim by the plaintiff for damages arising from the act of Dimick in revoking the arbitration, something that was not within their intention at all. Of course, if that act was not within the contemplation of the plaintiff when it agreed to pay its own costs, neither was it within the contemplation of the defendant when it pledged its property to pay the award. While the intention of the parties was, of course, the same, yet the decision in the case discharges the plaintiff from its stipulation as to costs, which now mean damages, and at the same time changes and enlarges that of the defendant in regard to the purpose for which it made the pledge by imposing upon its property a lien for a purpose never contemplated.

3. But it is said that the defendant's stock is surety for Dimick and can be proceeded against *in rem* upon breach by him of his agreement. There is nothing whatever in the agreement or the transaction that creates any relations of suretyship for Dimick. There is no legal privity between

them such as must always exist between principal and surety. The defendant voluntarily deposited the stock for a specific purpose, and that was to pay an award when made. When that event happened the plaintiff could appropriate the stock for that purpose without any regard to Dimick and as upon an original promise and pledge by the defendant. But even if the property stood as surety to pay the award when made, then surely the owner may protect it by invoking all the rules of law applicable to the liability of sureties. The surety cannot be held beyond the very terms of his agreement, since it is *strictissima juris.* His undertaking cannot be enlarged by construction or implication, and when it is sought to make him answer for the act or default of another, it is sufficient for him to show that he has not expressly agreed to be answerable for such act or default. (*Page* v. *Krekey,* 137 N. Y. 307; *Smith* v. *Molleson,* 148 N. Y. 241.) The plaintiff can point to no agreement by which this property was to be devoted to the payment of damages arising from Dimick's act, but, on the contrary, it is conceded that no such purpose was in contemplation when the agreement was executed.

4. It is asserted that very ancient and some modern authorities sustain this judgment. The oldest case relied on is *Vyniors Case* (4 Coke, 302). That contains all that any of the others contain, and is quite as favorable to the plaintiff as any of them. All that case or any of the others hold, that has any application to this case, is that an agreement to perform an award is broken by a revocation of the arbitration. No one, I think, will question that. The cases are good authority against Dimick, the only one who committed the breach. They were all actions against the party who violated his covenant, and not, as in this case, against an innocent party that has kept it. None of them support or give any color of support to the proposition upon which this judgment rests   The right to maintain an action against the party guilty of a breach of his agreement to arbitrate, and who has rendered an award impossible by revocation, or against his sureties in legal privity with him, upon written instruments,

should not be confounded with the right which the plaintiff asserts in this case. That is nothing less than the right to maintain an action against one who has never revoked, and who is not a surety, or in legal privity with another who did revoke, to appropriate property voluntarily pledged only to pay an award, under an agreement which excludes the right to damages in the form of costs and casts that burden on the party who complains. Moreover, the decisions in these cases are supported by an element of right and justice conspicuously absent in this case, since it is plain that in all of them the plaintiff lost by the revocation the right to collect his costs by including them in the award, whereas, in this case, the plaintiff lost no such right, it having been excluded by its own agreement. It is perfectly plain that, in the special and peculiar agreement now under consideration, the parties undertook to protect the property in question from all consequences of a revocation by Dimick. It was for that purpose and to that end that the pledge was restricted to the payment of an award when made; that all parties renounced the right to revoke; that the right to costs, and consequently to damages, was expressly excluded, and the burden of paying its own costs imposed upon the plaintiff. There is but one ground, as it seems to me, upon which this judgment can rest, and that is that it was legally impossible for the defendant, by any stipulation, or by the use of any form of words, to confine the pledge to the payment of an award, or to protect the property from a claim of damages arising out of the conduct of Dimick. If that proposition is not refuted by the bare statement of it, then it is quite evident that no argument, however conclusive, and no reasoning, however persuasive, would avail.

I think that the plaintiff has not shown that it has any claim or lien upon the property which is the subject of this action, and that the judgment should be reversed.

All concur, with VANN, J., for affirmance, except O'BRIEN, J., who reads for reversal, and PARKER, Ch. J., not sitting.

Judgment affirmed, with costs.