Roy **MORSER**, Plaintiff,

v.

**AT & T INFORMATION SYSTEMS,** Defendant.

**No. 86 Civ. 8594(RWS).**

United States District Court, S.D. New York.

June 6, 1989.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for plaintiff; Anne C. Vladeck, Laura S. Schnell, Jennifer L. Braun, of counsel.

Townley & Updike, New York City, for defendant; Daniel A. Rizzi, of counsel.

## OPINION

SWEET, District Judge.

In an opinion dated January 13, 1989, 703 F.Supp. 1072 (the "Opinion"), this court granted summary judgment pursuant to Rule 56, Fed.R.Civ.P., dismissing the age discrimination complaint filed by plaintiff Roy Morser ("Morser") against defendant AT & T Information Systems ("ATT–IS"). Morser has moved pursuant to Rule 3(j) of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York and Rule 59(e), Fed.R.Civ.P., for an order granting reargument of the summary judgment motion and, upon reargument, denying summary judgment or for an order altering or amending the judgment. For the reasons set forth below, Morser's motion for reargument is granted, and upon reconsideration, summary judgment in favor of ATT–IS is granted.

*Prior Proceedings*

ATT–IS laid off Morser, then aged fifty-eight, during the company's massive 24,000 employee reduction-in-force in 1985 and 1986. Following his discharge, Morser filed age discrimination charges with the New York State Division of Human Rights and the Equal Employment Opportunity Commission on April 28, 1986. On November 10, 1986, Morser filed the complaint in this action, alleging that ATT–IS violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, when it laid him off. ATT–IS moved for summary judgment dismissing the complaint. The court granted the motion, setting forth its rationale in a thirty-two page opinion. Familiarity with that opinion is assumed.

*Standards Under Rule 3(j) and Rule 59(e)*

A court should grant a motion to reargue under Rule 3(j) only if the moving party presents matters or controlling decisions the court overlooked that might materially have influenced its earlier decision. *See Gibson v. American Broadcasting Cos., Inc.,* 700 F.Supp. 707, 708 (S.D.N.Y. 1988); *Ruiz v. Commissioner of DOT,* 687 F.Supp. 888, 890 (S.D.N.Y.), *aff'd,* 858 F.2d 898 (2d Cir.1988). The rule's purpose is "to dissuade repetitive arguments on issues that have already been considered fully by the court." *Caleb & Co. v. E.I. DuPont De Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985). A party should not treat a motion to reargue as a substitute for appealing from a final judgment. *See Korwek v. Hunt,* 649 F.Supp. 1547, 1548 (S.D. N.Y.1986), *aff'd,* 827 F.2d 874 (2d Cir.1987). The standards that apply to Rule 3(j) motions to reargue also apply to Rule 59(e) motions to alter or amend the judgment. *See Lotze v. Hoke,* 654 F.Supp. 605, 607 (E.D.N.Y.1987).

*Morser's Motion for Reargument*

Morser bases his motion to reargue upon two recent Second Circuit employment discrimination decisions, *Montana v. First Federal Savings and Loan Association of Rochester*, 869 F.2d 100 (2d Cir.1989), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460 (2d Cir.1989), that Morser believes " 'might reasonably have altered the result,' " Morser Reply Mem. at 3 (quoting *Adams v. United States*, 686 F.Supp. 417, 418 (S.D.N.Y.1988)), had this court considered them in granting summary judgment. In particular, Morser focuses on the statement that a court must draw all factual inferences in favor of the party against whom summary judgment is sought, *see Montana*, 869 F.2d at 103; *Ramseur*, 865 F.2d at 465, and that summary judgment ordinarily is inappropriate where intent and state of mind are at issue. *See Montana*, 869 F.2d at 103; *Ramseur*, 865 F.2d at 465. On the basis of the subsequently decided Court of Appeals opinions, reargument is granted.

*The Grant of Summary Judgment*

Morser contends that this court failed to apply the principles set forth in *Montana* and *Ramseur* when it granted summary judgment against him, arguing that the Opinion "reflects a premature factual determination by the Court," Morser Mem. at 1, and that "the Court found facts and drew inferences which should have been left to a jury." *Id.* at 4. Morser identifies the following parts of the Opinion that he believes overlooked or misapplied applicable summary judgment standards:

—"ATT–IS hoped to retain employees with essential skills and strong performance." Opinion at 8.

—"In the context of a massive reduction-in-force slashing AT & T–IS's workforce by 25 percent, [words such as 'potential' and 'future potential'] reflect nothing more than a concern with the immediate future—particularly the company's ability to distribute the full range of functions among the remaining employees." Opinion at 29.

—Morser's superior's statement at her deposition ["There was an observation that there was age and that we ought to look at that."] "in context reveals a concern with seniority, not age. Moreover, the managers' decision to consider 'age' reflected a sensitivity to the impact the determination of universes would have on older workers—the managers ultimately concluded that the designation of universes would not unfairly affect these employees." Opinion at 29.

—ATT–IS distributed Morser's functions to Ware after managers, exercising their business judgment, "compared the skills of Morser and Ware and concluded that Ware could take over some of Morser's functions, but that Morser could not perform all of Ware's duties." Opinion at 30. Similarly, the company's decision to distribute some of Morser's functions to Magnini "reflected a concern with functions, not discriminatory intent." Opinion at 31.

Contrary to Morser's contention, the Opinion did not overlook the summary judgment principles set forth in *Montana* and *Ramseur*. The Opinion described the appropriate standards as follows:

Summary judgment is authorized if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986).

The moving party bears the burden of proving that no genuine issue of material fact exists. *See id.* at 247–48 [106 S.Ct. at 2509–10]; *Corselli v. Coughlin*, 842 F.2d 23 (2d Cir.1988). All doubts are resolved against the moving party, and all favorable inferences are drawn in favor of the party against whom summary judgment is sought. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 [90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142] (1970); *Eastway Constr. Corp. v. City of*

*New York,* 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied,* [—— U.S. ——] 108 S.Ct. 269 [98 L.Ed.2d 226] (1988); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (1983). The Supreme Court recently has made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually insupportable claims...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 [106 S.Ct. 2548, 2553, 91 L.Ed.2d 265] (1986). The Second Circuit has noted that "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Mieri [Meiri] v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829 [106 S.Ct. 91, 88 L.Ed.2d 74] (1985).

Opinion at 22–23.

This statement of the applicable summary judgment standards does not expressly state that summary judgment ordinarily is not appropriate where motive and intent are at issue. However, as Morser notes: "The determination of an individual's state of mind or of a party's motivation is a factual *inference,*" Morser Mem. at 2 (emphasis added), and therefore a matter to be resolved in favor of the nonmoving party.

■ Morser's concern, therefore, is not that this court overlooked the applicable summary judgment standards, but that it improperly applied them. Indeed, Morser says: "Plaintiff does not contend that summary judgment can never be granted in discrimination cases; *his contention is that it should not have been granted here.*" Morser Reply Mem. at 9 (emphasis added). However, that is a matter for Morser to raise on appeal, not in a motion to reargue or to alter or amend a judgment.

In addition, the facts in *Ramseur* differ substantially from those here. That case involved an isolated dismissal in which Chase Manhattan Bank fired its only Black audit manager. The bank denied that the dismissal was racially motivated, arguing that Ramseur's performance was unsatisfactory and that it had dismissed similarly situated White auditors. The Second Circuit overturned the district court's grant of summary judgment, noting that the court had failed to articulate the applicable standards for summary judgment and that "when inferences are drawn in [Ramseur's] favor, there are genuine issues of material fact to be tried, making summary judgment inappropriate." *Ramseur,* 865 F.2d at 465.

In particular, the Court noted Ramseur's "explicit and detailed" evidence refuting the bank's claim that her performance was unsatisfactory. Job reviews for the eight years prior to her firing revealed that Ramseur received "highly laudatory personnel evaluations," except for reviews prepared after the bank had decided to dismiss her. *Id.* at 466. The bank emphasized that Ramseur had participated in an audit for which the Comptroller of the Currency gave the bank its first ever unacceptable rating and imposed certain penalties, including a fine. However, following that audit, the bank promoted Ramseur to vice president and Ramseur received no oral or written criticisms until the bank had decided to fire her. Moreover, the bank's own documents indicated that it did not consider Ramseur's performance on that audit seriously flawed. In addition, the poor performance of White auditors had subjected the bank to sanctions on other audits without the bank treating those auditors like it treated Ramseur.

Responding to the bank's claim that it had treated the other auditors involved in Ramseur's faulty audit the same, the Second Circuit pointed to an internal bank document Ramseur had produced, which stated: "In [the] opinion [of a member of the bank's legal department], if [the auditors] were treated in the same fashion at the same time the Bank's case would be strengthened in the event of a suit." *Id.* at

464. According to the Second Circuit, the fact that the bank may have consulted its attorney before deciding to treat the auditors the same may indicate that the bank's treatments "were not based on the merits of their own performances but were merely strategic afterthoughts designed to mask discriminatory treatment already given Ramseur." *Id.* at 467.

A case involving the isolated firing of the bank's only Black audit manager and detailed and specific evidence contradicting the bank's proffered justifications hardly applies here. AT & T-IS dismissed Morser as part of a 24,000 employee reduction-in-force. One of the three staff managers dismissed in Morser's universe was thirty-eight, and ten of the twenty-one employees remaining in Morser's division following the dismissal were over forty and three were over fifty.

*Montana* illustrates the continuum upon which cases dismissing employment discrimination claims in reduction-in-force cases lie. Although that case overruled summary judgment dismissing Montana's age discrimination claim, it upheld summary judgment dismissing her sex discrimination claim, and its reasoning regarding the latter arguably supports summary judgment dismissing Morser's age discrimination claim.

Morser's dismissal differs significantly from the facts regarding Montana's termination that the Second Circuit believed defeated summary judgment on her age discrimination claim. "First, at the time of her discharge, Montana was the oldest and highest paid nonclerical employee in First Federal's personnel department." *Montana*, 869 F.2d at 105. Morser was the oldest employee within his six-person universe, but two others had more years of service than him. The record contains no evidence that Morser was the highest paid staff manager.

"Second, [Montana] was the only department head whose position was consolidated into the corporate headquarters at Rochester and whose staff continued without her." *Id.* Three of the six staff managers in Morser's universe—including one who was thirty-eight years old—lost their jobs.

"Third, she was not offered the opportunity to transfer to Rochester." *Id.* AT & T-IS made extensive efforts to help laid-off workers find other employment, but they were unsuccessful for seven of the thirty-seven at-risk employees in Morser's Organization, including Morser. The company also failed to place the two other staff managers in Morser's universe who lost their jobs, including one person aged thirty-eight.

"Fourth, after her termination, [Montana's] duties were not eliminated; instead, the bulk of her duties were reassigned to a coworker, Rossi, who was thirty years younger.... Moreover, because these additional duties overburdened Rossi, many of her duties were subsequently distributed to another younger, newly hired personnel employee." *Id.* AT & T-IS eliminated most of its trade show involvement, which affected Morser because many of his duties involved trade-show-related administrative functions. At his deposition, Morser acknowledged that the company's withdrawal from trade shows would significantly reduce his duties. The company distributed most of Morser's remaining functions to a thirty-two year old staff manager based in Chicago who performed other functions Morser was not qualified to perform, and it allocated the rest among the three protected staff managers in Morser's universe, all of whom were over forty. The company hired no new employees to assume Morser's duties.

"Fifth, when First Federal took over the personnel functions of its wholly owned subsidiary, HWD, and created the position of compensation analyst, it failed even to consider Montana for that position although she was qualified for it. Finally, after Montana's discharge, purportedly as part of a reduction in force, First Federal increased the number of employees in its personnel department by three, adding the positions of compensation analyst, assistant compensation analyst, and pension administrator. Still, Montana was neither offered a position nor even considered for

those positions." *Id.* at 105–06. As noted above, the company eliminated many of Morser's duties and distributed his remaining functions among existing employees. It hired no new employees to perform Morser's duties, nor did it add new positions to the Organization.

The Second Circuit upheld summary judgment dismissing Montana's sex discrimination claim, stating:

First Federal, on the other hand, has established that from September 1982 to November 1983, it decreased its work force in the metro region from approximately 600 employees to 480 employees, discharging from the metro region forty-five managers, both male and female. Additionally, it has produced evidence showing that, of eight managers in all regions whose entire departments were eliminated and functions consolidated into Rochester from March 1, 1982 to June 30, 1985, and who also received job offers or relocation assignments from First Federal, four were women. Montana does not refute this.

Montana's sex discrimination argument essentially boils down to a complaint that First Federal retained six male employees whose previous positions had been eliminated, but did not offer "Montana a position upon elimination of her position." Montana, however, presents no evidence, statistical or circumstantial, to justify an inference that First Federal made gender a factor in its termination decision. She presents no evidence, first, of the total number of male and female managers in the metro region; second, of the overall percentage of males discharged or offered other positions as compared to the overall percentage of women discharged or offered other positions in the metro region; third, to refute First Federal's evidence of non-discrimination based on its treatment of all managers whose entire departments were eliminated; or finally, that First Federal held discriminatory attitudes toward women in general or her in particular. To the contrary, the record shows that after her termination, women assumed Montana's duties and were hired or promoted to fill other newly created positions in Montana's department.

Without more, the mere fact that First Federal, during a structural reorganization in which it eliminated many positions, retained six male managers but did not offer Montana a position, does not permit an inference that First Federal discriminated against Montana on the basis of gender.

*Id.* at 107.

■ The Court's reasoning supports summary judgment dismissing Morser's claim. AT & T–IS dismissed Morser as part of a reduction-in-force that cut its work force by 24,000 employees, including about thirty percent of its management positions. The reduction-in-force had virtually no effect on the average age in Becker's Organization, which was 36.76 years before the downsizing and would have been 36.18 years had the company laid-off all thirty-seven employees it designated at-risk. Morser was the only person of the 165 employees in Becker's Organization to file an age discrimination complaint. The cutbacks also had virtually no effect on the average age in Morser's Division, which was 39.40 years before the reduction-in-force and 39.09 years afterwards. Among the six persons in Morser's universe, only one person was under forty, and he was laid off.

*Conclusion*

For the reasons set forth above, Morser's motion for reargument is granted and, upon reargument, summary judgment is granted dismissing the complaint.

It is so ordered.