**GRIFFIN INDUSTRIES, INC. and Ocean Logistics Corporation, as Charterers, Petitioner,**

v.

**PETROJAM, LTD. as owner of the M/V Petrojam Trader, Respondent.**

**No. 99 Civ. 1806 (RWS).**

United States District Court, S.D. New York.

Nov. 3, 1999.

---

Snow Becker Krauss, New York City Michael O. Hardison, of counsel, for Petitioner.

Watson, Farley & Williams, New York City John G. Kissane, of counsel, McAlpin

& Brais, Miami, FL, Richard J. McAlpin, of counsel, for Respondent.

## OPINION

SWEET, District Judge.

Petitioners Griffin Industries, Inc. and Ocean Logistics Corporation have moved, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Local Rule 6.3, for an order: (i) vacating this Court's opinion dated July 21, 1999, and judgment dated July 28, 1999, to the extent that the opinion and judgment deny Petitioners' motion to vacate or modify the arbitral awards dated December 14, 1998 and December 22, 1998 ("arbitral awards") and grant Respondent Petrojam's cross-motion to confirm the arbitral awards; (ii) granting Petitioners' motion to vacate or modify the arbitral awards and denying Respondent's motion to confirm the arbitral awards; and (iii) directing that hearings be held before the arbitrators. For the reasons set forth below, Petitioners' motion is denied.

### Facts and Prior Proceedings

The factual background of this case has been set forth in a prior opinion of this Court, familiarity with which is assumed. *See In re Arbitration between Griffin Industries, Inc. and Petrojam, Ltd.,* 58 F.Supp.2d 212 (S.D.N.Y.1999). Facts and prior proceedings relevant to the instant motion are set forth below.

On September 11, 1997, Respondent wrote to the chairman of the arbitration panel (the "Panel") hearing the dispute between Petitioners and Respondent, requesting "an opportunity to emphasize certain aspects of its claims via oral hearing." The Panel responded by facsimile of September 15, 1997, stating that a hearing would be scheduled after receipt of the parties' supplementary submissions. On September 25, 1997, Respondent sent its supplementary submissions to the Panel, enclosed within a letter which asked again for the opportunity of an oral hearing, and requested the opportunity to submit post-hearing legal memoranda. Several months later, after several apparent discovery delays, Petitioners' supplemental documentation was received by the Panel.

On February 5, 1998, Respondent proposed to the Panel a timetable for presentation of written arguments in the dispute, suggesting that Respondent submit its initial argument on March 20, 1998, that Petitioners answer by April 10, and that Respondent reply by May 1. The proposal also advised that it "may be possible to rest on the written submissions and avoid an oral hearing." The Panel, not hearing any objection from Petitioners, agreed to the proposed timetable.

Petitioners failed to timely submit their response brief by April 10, at which point Respondent requested that the Panel rule on the information then before it. The Panel declined to do so, instead notifying Petitioners that it was "prepared to act on the information received to date" and that their "prompt cooperation would be appreciated." Petitioners' Brief was received by the Panel on or around April 22, 1998.

On May 8, 1998, Petitioners wrote to Respondent, suggesting that the parties stipulate to certain facts, but that other facts were in dispute. Petitioners did not send a copy of this correspondence to the Panel.

On October 9, 1998, Respondent wrote to the Panel inquiring "as to the status of the panel's deliberations," and the "relative timing of the panel's ruling." On October 20, 1998, Petitioners wrote to the Panel in response, alleging that "there is significant dispute as to alleged facts, expenses and information which has not been furnished, and is not in the record. This matter does not appear to be in a proper posture for ruling, and we would suggest discussion should be directed to hearings. . . ." Petitioners added that they "did not wish to appear to acquiesce to possible ruling at this stage, until the panel and counsel have had benefit of all available facts."

On December 14 and 22, 1998, the Panel issued the final arbitration awards.

On February 12, 1999, Petitioners wrote to the Panel, complaining that the Panel had ruled without holding a hearing—despite Petitioners' letter of October 20, 1998—and requesting that the Panel "reopen" the proceedings. On February 17, 1999, the chairman of the Panel replied to Petitioners that he "never received the faxes of October 9 and 20." The chairman also noted that follow-up hard copies were not received, nor were copies sent to the two other arbitrators on the Panel. Finally, the chairman stated that the Panel was "*functus officio* and by its own power ... unable to reopen the record or modify the awards."

On March 11, 1999, Petitioners moved this court to vacate or modify the arbitration awards. Respondent, which had previously filed a petition in the United States District Court for the Southern District of Florida to confirm the arbitration awards, cross-moved to confirm the awards or to transfer the action to the Southern District of Florida.

By this Court's order of July 21, 1999, Petitioners' motion to vacate or modify the arbitration awards was denied, Respondent's motion to transfer was denied and Respondent's motion to confirm the arbitration awards was granted.

Petitioners filed the instant motion on August 12, 1999. Opposition and reply papers were received through August 27, 1999, at which time the motion was deemed fully submitted.

### Discussion

**I. *The Standard for a Motion for Reconsideration***

■ Petitioners have moved for reconsideration pursuant to Rule 59(e) and Local Rule 6.3. The standards governing those rules are identical. *See Candelaria v. Coughlin,* 155 F.R.D. 486, 491 (S.D.N.Y. 1994); *Morser v. AT&T Info. Systems,* 715 F.Supp. 516, 517 (S.D.N.Y.1989).

■ To prevail on a motion for reconsideration under Rule 59(e), the movant must present "[factual] matters or controlling decisions the court overlooked that might materially have influenced its earlier decision." *Robins v. Max Mara, U.S.A., Inc.,* 923 F.Supp. 460, 472 (S.D.N.Y.1996) (*quoting Morser,* 715 F.Supp. at 517. Alternatively, the movant must demonstrate "the need to correct a clear error or prevent manifest injustice." *Fruit of the Loom, Inc. v. American Marketing Enterprises, Inc.,* 97 Civ. 3510(HB), 1999 WL 527989, at *1 (S.D.N.Y. July 22, 1999) (*quoting Morales v. Quintiles Transnational Corp.,* 25 F.Supp.2d 369, 372 (S.D.N.Y.1998). These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court. *See Monaghan v. SZS 33 Assocs.,* 153 F.R.D. 60, 65 (S.D.N.Y.1994).

■ The motion is not a vehicle for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998). Moreover, the decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. *See Schaffer v. Soros,* No. 92 Civ. 1233(LMM), 1994 WL 592891 at *1 (S.D.N.Y. Oct.31, 1994) (*citing McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983)).

**II. *Petitioners Have Not Presented Factual Matters Materially Influencing the Court's Previous Decision***

Petitioners contend that although this Court in its prior opinion addressed the possibility that the arbitrators refused to hold hearings, this Court overlooked Plaintiff's alternative contention that the arbitrators "inadvertently neglected to hold hearings."

■ Petitioners are correct that this Court did not specifically consider in its

prior opinion the question of whether the Panel inadvertently neglected to hold hearings. However, the question is inapposite and reconsideration does not compel any change to the prior opinion and judgment.

■ First, this Court already determined that a deliberate refusal by the Panel to hold hearings in this matter would not constitute misconduct under the Federal Arbitration Act sufficient to justify vacating the arbitral awards. If a deliberate refusal to hold hearings would not constitute misconduct, common sense dictates that an inadvertent failure to hold hearings should not require a contrary result.

Second, the record does not support an inference that the Panel inadvertently failed to hold hearings. As the facts demonstrate, Respondents suggested on February 5, 1998 that a hearing on the matter might not be necessary. This suggestion was implicitly affirmed by the Panel one week later, and never specifically opposed by Petitioners. Petitioners did send a letter to Respondent on May 8, 1998 suggesting that the parties would not be able to stipulate to all the facts. The letter did not, however, specifically demand a hearing, nor—more to the point—were the members of the Panel copied on the letter.

Thus, under the factual scenario as Petitioners have presented it, it appears that the Panel could well have issued a decision as early as May, 1998—well in advance of Petitioners' letter of October 20, 1998. Petitioners were apparently on notice of this possibility, yet did nothing until receiving Respondent's letter of October 9, 1998.

Furthermore, even if the Panel *had* received Petitioners' October 20 letter, it is not at all clear that the Panel would have postponed its decision until it had held hearings. As recounted above, Petitioners' letter merely suggests that the "matter does not appear to be in a proper posture for ruling, and we would suggest discussion should be directed to hearings."

Had the Panel received this letter, it might well have disagreed with Petitioners' suggestion. Petitioners did not state in the October 20 letter that they were entitled to a hearing under the Marine Arbitration Rules; indeed, those rules are not mentioned at all. Nor did Petitioners specify what, exactly, was factually in dispute. The letter only references the briefs which Petitioners had already filed and which the Panel already had in its possession. Since the Panel decided to rule without a hearing, it apparently concluded that any factual matters in dispute were not material.

Finally, nothing in the Panel chairman's letter of February 17, 1999 suggests that the Panel would have held hearings had it in fact received Petitioners' letter of October 20, 1998.

■ As this Court's previous opinion stated, "As long as an arbitrator's choice to render a decision based solely on documentary evidence is reasonable, and does not render the proceeding 'fundamentally unfair,' the arbitrator is acting within the liberal sphere of permissible discretion." *Griffin,* 58 F.Supp.2d at 220.

■ The Court also reiterates that "the Second Circuit adhere[s] firmly to the proposition . . . that an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Id.* at 219 (*quoting Landy Michaels Realty Corp. v. Local 32B–32J,* 954 F.2d 794, 797 (2d Cir.1992)) (internal citations omitted). Furthermore, "[t]he lack of oral hearings does not amount to the 'denial of fundamental fairness' required to warrant vacating the award." *Id.* at 220 (*quoting Transit Cas. Co. v. Trenwick Reins. Co.,* 659 F.Supp. 1346, 1354 (S.D.N.Y.1987), *aff'd,* 841 F.2d 1117 (2d Cir.1988)).

On the record presented to this Court, there is far more than a barely colorable justification for the outcome reached by the Panel. This Court has reconsidered Petitioners' contention that the Panel inad-

vertently failed to hold hearings, and does not find the contention persuasive. The Panel's choice to render its decision without a hearing was reasonable.

**Conclusion**

For the reasons set forth above, Petitioners' motion for reconsideration is denied.

It is so ordered.