In re ASIA GLOBAL CROSSING, LTD., et al., Debtors.

No. 02 B 15749(SMB).

United States Bankruptcy Court, S.D. New York.

Nov. 10, 2005.

re *Asia Global Crossing, Ltd.*, 326 B.R. 240 (Bankr.S.D.N.Y.2005)(the "Opinion"), familiarity with which is assumed. The claim was based on a payment and performance guaranty (the "Guaranty") given by the debtor, Asia Global Crossing, Ltd. ("Asia Global"). The Guaranty pertained to the obligations undertaken by Global Crossing Bandwidth, Inc. ("GC Bandwidth"), pursuant to a certain Master Agreement, to provide telecommunications capacity to 360networks.

Each side moved for summary judgment. The Court ruled that on January 29, 2003—but not before then—the debtor committed an anticipatory repudiation of the Guaranty. Opinion, 326 B.R. at 256. The Court also held that 360networks would be required to prove, at a trial, that it was ready, willing and able to perform its own obligations but for the repudiation. *Id.* at 257. Finally, the Court determined, in accordance with FED.R.CIV.P. 56(d), that certain facts existed without substantial controversy. *Id.*

Golenbock Eiseman Assor Bell & Peskoe LLP (Jonathan L. Flaxer, Esq., of Counsel), New York, NY, for trustee.

Willkie Farr & Gallagher LLP (Alan J. Lipkin, Esq., Matthew V. Wargin, Esq., of Counsel), New York, NY, for 360networks Corporation.

## OPINION AND ORDER GRANTING LIMITED REARGUMENT, BUT UPON REARGUMENT, ADHERING TO THE ORIGINAL DECISION

STUART M. BERNSTEIN, Chief Judge.

The pending matter relates to an earlier ruling that concerned the Trustee's objection to a $100 million claim filed by 360networks Corporation ("360networks"), *see In*

Each side moved for reargument. For the reasons that follow, the Court denies the Trustee's motion in its entirety, grants 360networks' motion for the limited purpose of addressing the Rule 56(d) order, and upon reargument, adheres to its original decision.

## DISCUSSION

### A. Standards Governing the Motion

Motions for reargument or reconsideration[1] are governed by Local Bankruptcy Rule 9023–1(a), BANKR.S.D.N.Y. R. 9023–1(a), which states:

A motion for reargument of a court order determining a motion shall be served within 10 days after the entry of

---

**1.** The parties' motions refer to "reconsideration" while the Local Bankruptcy Rule 9023–

1 refers only to "reargument." The terms are used interchangeably in this decision.

the Court's order determining the original motion, or in the case of a court order resulting in a judgment, within 10 days after the entry of the judgment, and, unless the Court orders otherwise, shall be made returnable within the same amount of time as required for the original motion. The motion shall set forth concisely the matters or controlling decisions which counsel believes the Court has not considered. No oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be re-argued orally.

■ The movant must show that the court overlooked controlling decisions or factual matters "that might materially have influenced its earlier decision." *Anglo American Ins. Group, P.L.C. v. CalFed Inc.*, 940 F.Supp. 554, 557 (S.D.N.Y.1996)(quoting *Morser v. AT & T Information Sys.*, 715 F.Supp. 516, 517 (S.D.N.Y.1989)); *accord Banco de Seguros Del Estado v. Mutual Marine Offices, Inc.*, 230 F.Supp.2d 427, 428 (S.D.N.Y. 2002), *aff'd* 344 F.3d 255 (2d Cir.2003); *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y.1999); *Farkas v. Ellis*, 783 F.Supp. 830, 832–33 (S.D.N.Y.), *aff'd*, 979 F.2d 845 (2d Cir. 1992). "Alternatively, the movant must demonstrate the need to correct a clear error or prevent manifest injustice." *Griffin Indus.*, 72 F.Supp.2d at 368 (internal quotation marks and citations omitted); *accord Banco de Seguros Del Estado*, 230 F.Supp.2d at 428.

■ The rule permitting reargument is strictly construed to avoid repetitive arguments on issues that the court has already fully considered. *Griffin Indus.*, 72 F.Supp.2d at 368; *Monaghan v. SZS 33 Assocs. L.P.*, 153 F.R.D. 60, 65 (S.D.N.Y. 1994); *Farkas*, 783 F.Supp. at 832. In addition, the parties cannot advance new facts or arguments; a motion for reargu-

ment is not a vehicle for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir.1998)(discussing Rule 59); *accord Griffin Indus.*, 72 F.Supp.2d at 368 (discussing motions for reargument).

**B. The Trustee's Motion**

■ The Trustee seeks reargument of the determination that the debtor committed an anticipatory breach when the Court approved its application to sell substantially all of its assets to Asia Netcom Corporation Limited ("ANC") on January 29, 2003. He makes two arguments. First, other sources of telecommunications capacity existed. Hence, even after the sale to ANC, the debtor could have tapped into the available capacity, and used it to fulfill its obligations to 360networks. Consequently, the debtor's ability to perform presented a material factual dispute. (*Trustee's Memorandum of Law in Support of Motion for Reconsideration [etc.]*, dated July 8, 2005, at 5–7)(ECF Doc. # 645.) Second, the anticipatory breach could not have occurred until the sale closed on March 10, 2003, because until that point, the possibility existed that it would not close. (*Id.*, at 7–9.)

The Trustee never argued the first point during the earlier motions, much less offered evidence to support it. The second argument evokes Yogi Berra's observation that "it ain't over 'til it's over." In other words, until the sale was consummated, it was possible that it might not be consummated. If it was not consummated, the debtor would have continued to own or control the telecommunications capacity needed to perform the Guaranty.

The Opinion dealt with the legal effect of a later contract to sell the same property needed to perform an existing contract:

As noted, an anticipatory repudiation occurs when the obligor commits a voluntary and affirmative act that makes it "actually or apparently impossible for him to perform." RESTATEMENT (SECOND) OF CONTRACTS § 250, cmt. c. This includes situations in which the obligor transfers *or contracts to transfer* the specific property that is the subject of the earlier contract, CALAMARI & PERILLO, § 12–4, at 525–26; *see James v. Burchell,* 82 N.Y. 108, 114[, 1880 WL 14198] (1880)(seller repudiated contract to sell real property by conveying property to third party); RESTATEMENT (SECOND) OF CONTRACTS § 250, illus. 5 (1981) (seller repudiated contract to sell real property by entering into a subsequent contract to sell the same property to a third party), or more generally, enters into a second contract before the time of performance arrives that "puts it out of his power to keep his contract." *Computer Possibilities, Unlimited, Inc. v. Mobil Oil Corp.,* [301 A.D.2d 70,] 747 N.Y.S.2d 468, 475 (N.Y.App.Div.2002) (quoting *Union Ins. Co. v. Central Trust Co.,* [157 N.Y. 633,] 52 N.E. 671, 674 (N.Y. 1899)), *leave to appeal denied,* [100 N.Y.2d 504, 762 N.Y.S.2d 874,] 793 N.E.2d 411 (N.Y.2003); *accord Goodman Mfg. Co., L.P. v. Raytheon Co.,* No. 98 Civ. 2774(LAP), 1999 WL 681382, at *8 (S.D.N.Y. Aug.31, 1999); *see* RESTATEMENT (SECOND) OF CONTRACTS § 251, illus. 1 (a party that contracts to allow a performer to use a concert hall on a specific future date repudiates that agreement by entering into a contract with a third party prior to the time for performance to use the concert hall on the same date); *see also* 22A N.Y. JUR.2D, CONTRACTS § 447, at 134–35 (1996).

326 B.R. at 255–56 (emphasis added). The Trustee's current argument is simply a rehash of the same argument that the Trustee made unsuccessfully in opposition to 360networks' earlier cross-motion.

■ In fact, the Trustee's second contention is essentially a criticism of the doctrine of anticipatory repudiation. A person who, through word or deed, indicates his unwillingness to perform in the future can always change his mind prior to the time that performance is due. Similarly, a person who commits a voluntary act that renders performance impossible may, in many instances, be able to undo the act. The law nevertheless implies an anticipatory breach in these circumstances. In the absence of prejudice, the breaching party may be able to retract his act of anticipatory repudiation. RESTATEMENT (SECOND) OF CONTRACTS § 256(1)(1979); *see* N.Y.U.C.C. § 2–611(1). Here, however, the debtor did not retract its repudiation or state its intention to perform the Guaranty.

Having failed to show that the Court overlooked something, made a clear error or committed a manifest injustice, the Trustee's motion for reargument is denied.

## C.  360networks' Motion

360networks' motion for reargument makes several points. First, it generally repeats its earlier arguments, with some new variations, about the evidence and the inferences that should be drawn from that evidence. In the process it makes a new argument regarding the significance of the ANC sale motion. Second, it maintains that the requirement to show that it was "ready, willing and able" to perform its own obligations should not apply. Third, it questions the propriety of making Rule 56(d) findings, and as a corollary, states that neither party moved on the issue of adequate assurance of future performance, and the Rule 56(d) order should not have included any "findings" on this subject. While the first two arguments do not war-

rant reconsideration, the propriety of the Rule 56(d) order is worth another look.

### 1. The Evidence of Anticipatory Repudiation

■ As discussed fully in the Opinion, an obligee asserting an anticipatory repudiation must show a "positive and unequivocal" statement by the obligor of an intention not to perform. Opinion, 326 B.R. at 249. Alternatively, the obligee must show that the obligor committed "a voluntary and affirmative act that makes it 'actually or apparently impossible for him to perform.'" *Id.* at 254 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 250 cmt. c (1979)). If the statement or act falls short of these standards, or if the obligee believes that the obligor will not perform for reasons unrelated to any statement or act, the obligee may, at its option, demand adequate assurance of future performance. *Id.* at 250. If the demand is proper and the obligor does not provide adequate assurance that he will perform, the obligee may treat the failure as an anticipatory repudiation. *Id.*

■ With one exception, 360networks argued that GC Bandwidth or Asia Global, or both, made statements that indicated their intention not to perform. Its evidence fell into three categories. First, 360networks' attorneys made some vague references to "express words and deeds" demonstrating GC Bandwidth's and Asia Global's clear intentions not to perform. The Court dismissed this evidence out of hand as conclusory attorney hearsay. *Id.* at 252–53 (regarding GC Bandwidth); *id.* at 255 (regarding Asia Global). 360networks does not appear to challenge these conclusions in its current motion.

Second, 360networks pointed to the changing economic circumstances and market conditions, including Global Grossing's and Asia Global's interdependence, their deteriorating relationship, and the oversupply of and decline in price for telecommunications capacity, and argued that neither GC Bandwidth nor Asia Global could have performed in light of these conditions. The Court also rejected this argument. The economic circumstances were neither statements nor voluntary acts bearing on Asia Global's intention or willingness to perform. Citing *Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 682 N.Y.S.2d 664, 705 N.E.2d 656 (1998), the Court ruled that the deteriorating economic circumstances may have justified a demand for adequate assurance of future performance, but they did not rise to the level of an anticipatory repudiation. *Id.* at 251–52.

360networks repeats the same argument in its motion for reargument. It contends that the "[o]ne (if not the only) logical conclusion from these facts is that by early 2002" GC Bandwidth lacked any ability or incentive to satisfy the Asia Commitment, and planned to breach the Master Agreement and incur a $100 million claim payable in tiny "bankruptcy dollars." (*360networks Corporation's Memorandum of Law in Support of Motion ... for Reconsideration of Portions of the [Opinion]*, dated Sept 26, 2005 ("*360networks' Reconsideration Memo*"), at 9)(ECF Doc. # 664.) The argument adds nothing new to the prior motion.

Third, 360networks emphasized specific statements (or testimonial acts) which, it maintained, constituted evidence of anticipatory repudiation. These included the Settlement Agreement between Global Crossing and its affiliates (including GC Bandwidth) on the one hand, and the 360networks affiliates on the other, GC Bandwidth's rejection of the Master Agreement and Asia Global's $5 million settlement offer. The Court rejected the contention that these were sufficiently pos-

itive and unequivocal statements to meet the test for an anticipatory repudiation. Opinion, 326 B.R. at 253–54 (regarding GC Bandwidth); *id.* at 254–55 (regarding Asia Global).

360networks now asks me to reconsider Asia Global's $5 million settlement offer in "context." 360networks complains that the Opinion focused only on the fact of the offer and not on its extremely low amount.[2] It contends that the Court must "confront the significance of why Asia Global would offer only $5 million to satisfy a $100 million obligation in the context of all the facts discussed." (*360networks' Reconsideration Memo,* at 11.) According to 360networks, the "context" makes it apparent (or, at least implies) that Asia Global's $5 million settlement offer was a clear statement that it was either unwilling or unable to perform.

The Court previously considered and rejected this argument. It speculated on what the offer implied, not for the purpose of making findings, but to show that neither the offer nor the amount of the offer was a positive and unequivocal statement by Asia Global that it would not perform. Opinion, 326 B.R. at 255. Moreover, 360networks implicitly concedes this point. Its invitation to consider the "context" suggests that the offer, standing alone, is ambiguous, equivocal and unclear.

360networks relied on an alternative theory of anticipatory repudiation (*i.e.,* the voluntary, disabling act) to argue that the ANC sale breached the Guaranty. According to 360networks, the sale liquidated "all of the assets necessary to fulfill the Asia Commitment," and "put it out of GC Bandwidth's or [Asia Global's] power to perform." (*360networks Corporation's*

*Memorandum of Law in Support of Motion for Summary Judgment and in Opposition to Chapter 7 Trustee's Motion for Summary Judgment on Objection to Claim Number 5,* dated May 6, 2005, at 13 (ECF Doc. 612); *accord 360networks Corporation's Reply Memorandum of Law in Support of 360networks Corporation's Motion for Summary Judgment on Chapter 7 Trustee's Objection to Claim Number 5 and in Response to Chapter 7 Trustee's Opposition Thereto,* dated May 20, 2005 ("*360networks' Reply Memo*"), at 15 (ECF Doc.# 629.)

The Court ultimately agreed, but did not begin and end with the consummation of the sale. Instead, it looked backwards to decide if Asia voluntarily disabled itself from performing at an earlier point. Initially, the Court rejected the notion that the filing of the ANC sale motion led to an anticipatory repudiation:

> Asia Global's motion to sell all of its assets, without more, did not prevent it from living up to the performance guaranty. The proposed transaction fell outside of Asia Global's ordinary course of business, and required Court approval. *See* 11 U.S.C. § 363(b)(1). Asia Global was not, therefore, bound to perform the ANC Sale contract until Court approval. Prior to approval, Asia Global could withdraw the application and abandon the contract, or the terms of the sale contract could change. The proposed sale contract might have given 360networks pause and entitled it to demand adequate assurance of future performance, but it did not legally prevent Asia Global from meeting its obligations.

**2.** 360networks argues that the Court improperly questioned the admissibility of the settlement offer. (*360networks' Reconsideration Memo,* at 10.) In fact, the Opinion assumed that the offer was admissible and ruled that it was not an act of repudiation. 326 B.R. at 254–55.

Opinion, 326 B.R. at 256. The Court concluded, however, that the breach occurred when the motion was approved:

> Once the Court approved the contract, however, Asia Global lost control of the ability to satisfy the performance guaranty. At that point, it was obligated to transfer the assets that were necessary to that performance to Asia Netcom, free and clear of the obligation to perform. *A fortiori*, the consummation of the sale rendered Asia Global incapable of satisfying the performance guaranty. Accordingly, Asia Global breached the Guaranty through anticipatory repudiation on January 29, 2003, with two months remaining during which 360networks could takedown capacity.

*Id.*

■ 360networks now says that the Court overlooked another argument—that the ANC sale motion was an unequivocal statement by Asia Global that it would not perform under the Guaranty. 360networks did not make this argument before. It always focused on the fact of the sale as a voluntary disabling act, and not on the sale (or the motion to approve it) as a statement of intention not to perform. Accordingly, the Court declines to consider this argument.

360networks' has failed to show that the Court overlooked anything, or that its view of the evidence or arguments advanced by 360networks was clearly erroneous or manifestly unjust.

### 2. The "Ready, Willing and Able" Requirement

■ The Opinion held that 360networks must still prove that it would have been ready, willing and able to perform its obligations under the Master Agreement but for Asia Global's anticipatory repudiation.[3] The requirement is not unique to the doctrine of anticipatory repudiation. Instead, it is based on the general requirement that a party aggrieved by a breach of contract must prove that it was injured by the breach in order to recover damages. The Opinion stated:

> To recover damages ... the non-breaching party must also show that he was ready, willing and able to perform his own obligations but for the repudiation. *Tower[s] Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 523 (2d Cir.1990); *In re Randall's Island Family Golf Ctr.*, 272 B.R. 521, 524 (S.D.N.Y. 2002); *Argonaut P'ship L.P. [v. Grupo Sidek, S.A.]*, 1996 WL 617335, at *5 [(S.D.N.Y.Oct. 25, 1996)]; *Huntington Mining Holdings, Inc. v. Cottontail Plaza, Inc.*, [60 N.Y.2d 997, 471 N.Y.S.2d 267,] 459 N.E.2d 492, 492 (N.Y.1983); *DeForest Radio Tel. & Tel. Co. v. Triangle Radio Supply Co.*, 153 N.E. at 78; RESTATEMENT (SECOND) OF CONTRACTS § 254(1); *see Strasbourger*, 134 N.E. at 836. "This principle is merely the application of the general rule that the complaining party must demonstrate that the breach caused him injury; '[t]o do this he must prove that he intended to and was able to perform when his performance was due.'" *Record Club of Am.*, 890 F.2d at 1275 (quoting *Scholle v. Cuban–Venezuelan Oil Voting Trust*, 285 F.2d 318, 320 (2d Cir.1960)). Thus, even where a party breaches by repudiation, "[h]is duty to pay damages is discharged if it subsequently appears that there would have been a total failure of performance by the injured party ... sufficient to have discharged any remaining duties of the party in breach to

---

**3.** The Opinion included a lengthy discussion of 360networks' obligations and the conditions precedent to GC Bandwidth's and Asia Global's performance duties.

render performance." RESTATEMENT (SECOND) OF CONTRACTS § 254(1), cmt a. 320 B.R. at 249–50 (footnote omitted).

360networks' argues that the "ready, willing and able" requirement does not apply because it had already paid the entire purchase price and had few, if any, remaining performance obligations. It also maintains that the cases cited in the Opinion involved parties who had not yet paid any portion of the purchase price and had substantial remaining performance obligations. These arguments are self-defeating.

▌ Under New York law,[4] the doctrine of anticipatory repudiation is limited to bilateral contracts "embodying some mutual and interdependent conditions and obligations." *Long Island R.R. Co. v. Northville Indus. Corp.*, 41 N.Y.2d 455, 393 N.Y.S.2d 925, 362 N.E.2d 558, 563 (1977). Furthermore, the doctrine does not apply to "a contract originally bilateral that has become unilateral and similarly unconditional by full performance by one party." *Id.* (quoting RESTATEMENT (FIRST) OF CONTRACTS § 318 (1932))(internal quotation marks omitted). "The question is whether, at the time of the repudiation, there existed some dependency of obligation." *Id.* at 565. In bankruptcy parlance, the doctrine only applies to contracts that are executory at the time of repudiation.

The rationale for the limitation is historically sound. The doctrine of anticipatory repudiation "evolved as a defense to performance by the injured party." *Id.* at 563. If a bilateral contract has been fully performed by the injured party, the latter does not need the doctrine to excuse its performance. *Id.* Instead, as in the usual

breach of contract case, the aggrieved party must await the actual breach and then sue.

▌ By downplaying its own remaining obligations, 360networks necessarily undercuts its basis for invoking the doctrine of anticipatory repudiation. If its remaining obligations were so minimal or nonexistent, or if performance of those obligations was independent of the debtor's duties, the doctrine would not apply. In that circumstance, the Trustee would be entitled to summary judgment. 360networks prepaid $100 million in exchange for GC Bandwidth's promise, and Asia Global's Guaranty, to deliver $100 million of capacity in the future. If 360networks did not request the full $100 million worth of telecommunications capacity, neither GC Bandwidth nor Asia Global had to repay the unused part of the $100 million. *See* Opinion, 326 B.R. at 244.

The Trustee satisfied his initial burden on his motion for summary judgment by showing that 360networks never requested capacity in accordance with the procedures set out in the Master Agreement. *See id.* at 248–49. 360networks survived the Trustee's motion because it successfully argued that it was relieved from making the contractual request after January 29, 2003 under the doctrine of anticipatory repudiation. If 360networks' obligation to ask for capacity was insubstantial or independent, it could not rely on the doctrine to excuse the failure of condition.

In fact, 360networks still had significant performance obligations. It " 'unconditionally and irrevocably' agreed, *inter alia,* 'to accept, purchase, pay for in full and receive an IRU [indefeasible right to use] on the EAC and/or PC–1 systems for an

---

4. New York law governed the Master Agreement, Opinion, 326 B.R. at 243 n. 2, and the

Guaranty. *Id.* at 245 n. 6.

aggregate purchase price of $100,000,-000.'" Opinion, 326 B.R. at 243 (quoting *Master Agreement*, at § 2(a)). 360networks paid the purchase price, but still had to accept, purchase and receive the IRU. To do so, it had to affirmatively takedown the capacity by following a detailed procedure. *See id.* at 244–45.

360networks has failed to show a basis to reconsider the conclusion that it must demonstrate that it was "ready, willing and able" to perform its obligations but for the repudiation. Accordingly, the Court declines to reconsider that conclusion.

### 3. The Propriety of the Order Under of Fed.R.Civ.P. 56(d)

At the conclusion of the Opinion, the Court made four "findings" under Rule 56(d):

(1) 360networks never ordered capacity in accordance with the Master Agreement from either GC Bandwidth or Asia Global prior to March 30, 2003, (2) 360networks never demanded adequate assurance of future performance from either GC Bandwidth or Asia Global prior to March 30, 2003, (3) GC Bandwidth did not repudiate the Master Agreement, and (4) Asia Global repudiated the Guaranty on January 29, 2003, but not before then.

Opinion, 326 B.R. at 257.

360networks contends that the Rule 56(d) "findings" were inappropriate given the early stage of the proceedings and the nature of the evidentiary burden it bore in connection with the cross-motions. The reargument motion affords the opportunity to explore these issues.

### a. Introduction

■ A motion for summary judgment does not always result in or require the court to grant dispositive relief. "[A] court may decide only some of the claims, or merely parts of claims." 11 James Wm. Moore, Moore's Federal Practice § 56.40[1], at 56–279 (3d ed. 2005)("Moore"). Rule 56(d) puts this last idea into operation, stating as follows:

If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Rule 56(d)is "akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact." Fed. R.Civ.P. 56 advisory committee note (1946); *accord* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil § 2737, at 318 (3d ed.1998). The Rule allows the court to resolve significant questions, and "focus the litigation on the true matters in controversy." 11 Moore § 56.40[2], at 56–281.

■ The usual summary judgment standard applies to Rule 56(d) determinations; a party's failure to demonstrate a genuine issue of material fact relating to a particular claim or defense may support a ruling that eliminates the issue from the

litigation. 11 MOORE § 56.40[2], at 56–280; *see Aurelio v. Rhode Island Dep't of Admin.*, 985 F.Supp. 48, 53 (D.R.I.1997). The ruling may resolve issues of fact or law. 11 MOORE § 56.40[2], at 56–281. An order under Rule 56(d) is not final, and the order may be revised at a later stage in the litigation, upon appropriate notice to the parties, if the circumstances warrant the change. 11 MOORE § 56.40[2], at 56–281 to 56–282; *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 386 (2d Cir.1989); *see Leasing Serv. Corp. v. Graham*, 646 F.Supp. 1410, 1414 (S.D.N.Y.1986).

### b. The Stage of the Proceedings

■ 360networks contends that the Rule 56(d) "findings" were premature because it did not have the opportunity to take discovery. Yet Rule 56 authorizes a party to move for summary judgment after 20 days from the commencement of the action or after service of a summary judgment motion by the adverse party. FED. R.CIV.P. 56(a). The motion need not await the completion of discovery. If a party needs discovery to oppose the motion, it may seek a continuance to allow it to conduct discovery. FED.R.CIV.P. 56(f). Furthermore, if a court can dispose of an entire case on a motion for summary judgment prior to the commencement or completion of discovery, it stands to reason that it can also make partial summary adjudications at an early stage. If *Jenkins v. Greyhound Lines, Inc.*, No. C–46141–RHS, 1971 WL 529 (N.D.Cal. May 4, 1971), supports a different rule, as 360networks insists, the decision is not persuasive.[5] Moreover, 360networks never requested a continuance to conduct discovery, and even made its own motion for summary judgment on the anticipatory breach issue, indicating its own view that the issue was ripe for summary adjudication.

### c. The Propriety of Making Rule 56(d) Findings

■ 360networks maintains that even if it failed to convince the Court that an anticipatory repudiation occurred before January 29, 2003, this should only mean that those arguments failed on summary judgment, not that 360networks is precluded from raising them at trial. According to 360networks, its burden was to defeat the Trustee's motion, once he met his initial burden. To do this, 360networks only had to show a single instance of repudiation, not to show every possible instance or that a repudiation occurred prior to a specific date. (*360networks' Reconsideration Memo*, at 13.)

■ The party that opposes a motion for partial or total summary judgment but withholds its evidence, acts at its peril.[6] The court must parse the proof, and "shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." FED.R.CIV.P.

---

5. *Jenkins* has been cited only once in 34 years, and for an entirely different proposition. Moreover, its aversion to partial summary adjudication predated the Supreme Court trilogy—*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–54, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)—

which "infused Rule 56 with new legitimacy and opened the way toward a clearer and more coherent jurisprudence." William W. Schwarzer, Alan Hirsch & David J. Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 445 (Feb.1992)

6. In many cases, a party moves for a partial summary judgment or partial summary adjudication on a particular issue rather than summary judgment on the entire case.

56(d). Thus, even if the court denies the motion for summary judgment, the opposing party may suffer adverse rulings on some of the legal and factual issues. *Cf. Gillette v. Delmore,* 886 F.2d 1194, 1198–99 (9th Cir.1989)(affirming partial summary adjudication that plaintiff municipal employee was not discharged based on his political activities where municipal defendants adduced evidence that they were not aware of those activities and plaintiff responded with insufficient affidavit); *Leasing Serv. Corp. v. Graham,* 646 F.Supp. at 1416, 1418 (denying total summary judgment based on factual dispute regarding damages, but granting plaintiff partial summary judgment on liability and rejecting defendant's claims of fraudulent inducement and unconscionability based on the failure to show that he was fraudulently induced or unfairly pressured to enter into agreement or that agreement was "so one-sided as to be unreasonable"); *Belinsky v. Twentieth Rest., Inc.,* 207 F.Supp. 412, 413–14 (S.D.N.Y.1962)(granting partial summary judgment to plaintiff and finding several facts based on the opposing party's submission of affidavits that failed to controvert plaintiff's evidence and claimed lack of knowledge without conducting a reasonable factual investigation).

Since the cross-motions did not dispose of the Trustee's claim objection, the Court considered whether any issues or parts of issues existed "without substantial controversy" or were "actually and in good faith controverted." The Court had a very thorough record, and neither side argued that it needed more time to supplement the record. The parties, and particularly 360networks, understood that the timing of the anticipatory breach was as important as the fact of the anticipatory breach. The Guaranty only covered orders for telecommunications capacity placed within the two year period beginning March 30, 2001. To recover damages, 360networks would have to show that it was ready, willing and able to perform its obligations (*i.e.,* order capacity) but for an anticipatory repudiation. A breach on the first day of the two year period would have far different effects compared to a breach on the last day of the period. The later the breach, the harder 360networks' burden. It would need to prove that it would have ordered $100 million in capacity but for the breach when it had not ordered any capacity up to that point.

Consequently, it was appropriate to view the question of anticipatory breach against a time line. In this regard, it is correct to say that the Court denied the Trustee's motion for summary judgment to expunge 360networks' claim. But it is equally correct to say that the Trustee demonstrated that 360networks never requested capacity, and 360networks failed to raise a triable issue that it was excused from doing so prior to January 29, 2003. The question is whether that failure should result in the type of Rule 56(d) order that the Court made.

Several factors present in this case support the conclusion that it should. First, 360networks had the burden of proof on the issue of anticipatory repudiation. *See Wantanabe Realty Corp. v. City of New York,* 315 F.Supp.2d 375, 404 (S.D.N.Y.2003)(despite denial of defendants' motion for summary judgment, plaintiffs' failure to adduce admissible evidence of racial animus, on which they had the burden of proof, justified determination under Rule 56(d) "that no such animus existed or played any role in the events at issue"). Second, 360networks had access to the evidence it needed, and was in the best position to know if it had been informed by Asia Global or GC Bandwidth that they did not intend to perform. This conclusion is bolstered by two additional facts; 360networks did not seek a continu-

ance to conduct discovery, and made its own motion for summary judgment. Third, in light of the "ready, willing and able" requirement, 360networks had the motive to show the earliest possible anticipatory breach. Despite the burden, access and motive, 360networks' failed to marshal the proof to raise a substantial controversy or show the existence of a good faith dispute regarding an earlier anticipatory breach. That failure warranted an order pursuant to Rule 56(d) fixing the earliest date of the anticipatory breach as January 29, 2003.

### d. Adequate Assurance of Future Performance

The "finding" regarding the failure to request adequate assurance followed from this determination. Initially, 360networks is only partially correct that neither party moved on the adequate assurance issue. (*360networks' Reconsideration Memo*, at 8.) Although the Trustee did not raise the matter in his motion, the issue quickly rose to the surface once 360networks invoked the doctrine of anticipatory repudiation and relied on "economic circumstances." The Trustee maintained in its reply papers and at oral argument that if 360networks thought that Asia Global was not going to honor the Guaranty, it should have demanded adequate assurance of future performance. (*See Chapter 7 Trustee's (i) Reply to Objection of 360networks Corporation to Chapter 7 Trustee's Motion for Summary Judgment on Objection to Claim Number 5, and (ii) Opposition to 360networks Corporations' Cross Motion for Summary Judgment*, dated May 18, 2005, at 13 (ECF Doc. # 623); Transcript,

dated May 24, 2005 ("5/24/05 Tr."), at 3 (ECF Doc. # 680).)

360networks rose to the bait. It asserted in its opposing brief, that it had a right, but not a duty, to demand adequate assurance. It also vaguely referred to demands for adequate assurance, noting that it "had extensive communications with GC Bandwidth and AGC regarding capacity and potential settlements." (*See 360networks' Reply Memo*, at 18.) At oral argument, during questioning by the Court,[7] its counsel reiterated that the "doctrine of adequate assurance of future performance [is] a right. If you're feeling insecure we have the right to ask for it. It is not an obligation. *There is nothing to lose if you don't exercise that right.*" (5/24/05 Tr. at 35)(emphasis added.)

Once the issue was raised, 360networks never argued that it demanded adequate assurance of future performance, much less offered probative evidence of a demand. To the contrary, the plain import of all of its responses was that it did not have to demand adequate assurance and never did.

Furthermore, the failure to provide adequate assurance, after it has been properly demanded, constitutes an anticipatory repudiation. Opinion, 326 B.R. at 250; RESTATEMENT (SECOND) OF CONTRACTS § 251(2)(1979); *see Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 682 N.Y.S.2d 664, 705 N.E.2d at 661. The conclusion that 360networks' failed to show an anticipatory breach prior to January 29, 2003, necessarily implies that it failed to show an unsatisfied de-

---

**7.** One of 360networks' complaints is that I did not interrogate counsel as contemplated by Rule 56(d). The transcript of the argument reflects substantial colloquy between the Court and Alan J. Lipkin, Esq., 360networks' lawyer, during which the Court interrogated Mr. Lipkin (and Mr. Lipkin interrogated the Court) about the factual and legal issues raised by the cross-motions, including the sufficiency of the evidence. (*See* 5/24/05 Tr. at 15–47.)

mand for adequate assurance prior to that date.

In conclusion, the Court denies the Trustee's motion for reargument, and grants 360networks' motion to the limited extent of addressing whether it was appropriate to issue an order pursuant to FED. R.CIV.P. 56(d). Upon reargument, the Court adheres to its earlier determination.

So ordered.