**In re: TRICO MARINE SERVICES, INC., et al., Debtors.**

**Steven Salsberg and Gloria Salsberg, Plaintiffs,**

**v.**

**Trico Marine Services, Inc., Trico Marine Assets, Inc., Trico Marine Operators, Inc. and Trico Marine International, Inc. Defendants.**

**Bankruptcy No. 04–17985(SMB).**
**Adversary No. 05–2313.**

United States Bankruptcy Court, S.D. New York.

Nov. 22, 2006.

Opinion Denying Reargument Jan. 16, 2007.

Kirkland & Ellis LLP, New York City (Matthew Solum, Peter Asplund, Lisa Laukitis, Of Counsel), for Defendant.

Steven C. Salsberg, New York City, pro se.

Law Office of Joseph P. Garland, New York City (Joseph P. Garland, Of Counsel), for plaintiff Gloris Salsberg.

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT

STUART M. BERNSTEIN, Chief Bankruptcy Judge.

The plaintiffs, Steven Salsberg ("Steven") and Gloria Salsberg ("Gloria"), are

former shareholders of the debtor Trico Marine Services, Inc. Their shares were cancelled under the confirmed plan (the "Plan"). Contending that the confirmation was procured through the perjurious testimony of Trevor Turbidy, the debtors' former chief financial officer and present chief executive officer, the Salsbergs sought unsuccessfully to vacate the confirmation order. They then filed a claim for damages against the debtors. They now seek leave to amend their complaint to assert a damage claim against Turbidy, arguing that his perjury was a fraud on the Court.

Their proposed pleading is legally insufficient, and would not survive a motion to dismiss. Since the proposed amendment is futile, leave to amend is denied.

## BACKGROUND

The background to this dispute is set forth in the Court's prior opinions reported at *Salsberg v. Trico Marine Servs., Inc. (In re Trico Marine Servs., Inc.)*, 337 B.R. 811 (Bankr.S.D.N.Y.2006)("*Trico I*") and *Salsberg v. Trico Marine Servs., Inc. (In re Trico Marine Servs., Inc.)*, 343 B.R. 68 (Bankr.S.D.N.Y.2006)("*Trico II*"). As this opinion focuses on the legal sufficiency of the proposed Second Amended Complaint ("SAC"), I recount the material facts alleged in that pleading, and assume that they are true.[1]

### A. The Fraud

The debtors filed their chapter 11 petitions on December 21, 2004. (SAC, ¶ 18.) They confirmed their pre-packaged Plan

on or about January 19, 2005, and the Plan became effective on March 15, 2005. (*Id.*, ¶ 16.) At the time of the confirmation hearing and the effective date, Steven owned 44,000 shares of common stock in Trico Marine Services, Inc. (*Id.*) Pursuant to the Plan, Steven's common shares were cancelled, and he received the aggregate of 1188 warrants. (*See id.*) After the confirmation hearing, he transferred the aggregate of 87 warrants to his mother, Gloria, together with the fraud claims asserted in this litigation. (*See id.* ¶¶ 17, 59, 64.)

The gravamen of the Salsbergs' claims appear to center on two, related frauds pertaining to the disclosure of the debtors' 2004 fourth quarter operating results. The debtors' Disclosure Statement, which was signed by the debtors' then-chief executive officer, Thomas Fairly, on November 12, 2004, included certain financial information and projections. (*Id.* ¶¶ 23–24.) The fourth quarter projections were based on the information available as of September 30, 2004. (*Id.* ¶ 25.) The Disclosure Statement projected fourth quarter revenues of $24.9 million. (*Id.* ¶ 28.)

By the time of the January 19, 2005 confirmation hearing, the fourth quarter had closed. The debtors' actual revenue for the fourth quarter was $33.7 million, (*id.*, ¶ 29), or 35% higher than the projection in the Disclosure Statement. (*Id.* ¶ 30.) Turbidy nevertheless testified at the confirmation hearing "without qualification albeit preliminarily" that the fourth quarter revenue was fairly consistent with and not materially higher than the pro-

---

1.   A copy of the SAC is annexed as Exhibit 1 to the Affidavit of Joseph A. Garland, sworn to June 16, 2006 ("Garland Affidavit")(ECF Doc. # 37.) In addition to the SAC, the Court can also consider the January 19, 2005 transcript of the confirmation hearing ("Tr.1/19"), part of which is annexed as Exhibit 3 to the Garland Affidavit. The full transcript is filed in

the case (04–17985) as document number 91. The Salsbergs relied on and quoted Turbidy's testimony in drafting the SAC, and his testimony, evidenced in the transcript, is integral to their claims. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995)).

jected revenue. (*Id.* ¶ 32.)[2] Turbidy's testimony was false, and was made with knowledge of the falsity, or with reckless disregard of the truth. (SAC, ¶¶ 32, 38.) Turbidy also personally benefited, because the value of the stock options that he received increased, and his prominence and personal stature were enhanced. (*Id.* ¶ 39.)

Furthermore, the financial projections in the Disclosure Statement were misleading, even if they were correct when they were made. The financial projections were unrealistic, contained false information and used unreasonably false assumptions, all apparently connected to the incorrect misstated fourth quarter operating results. (*Id.* ¶ 42.) Had the Court known that the actual fourth quarter revenue was $33.7 million, it would not have relied on the financial projections or any valuation based on those projections. (*Id.*)

For the same reason, the valuation evidence presented at the confirmation hearing was also flawed. Richard Nejame, the debtors' valuation expert, did not use correct information, because he relied on the erroneous projections. (*See id.* ¶ 43.) Had Turbidy testified truthfully, his testimony would have impeached Nejame's testimony, and buttressed Steven's higher valuation. (*Id.* ¶ 45.) Most importantly, the truthful testimony would have sup-

ported a finding that the debtors were solvent. (*Id.* ¶ 46.)

## B. This Litigation

The debtors commenced this lawsuit against the Trico debtors under 11 U.S.C. § 1144 to revoke the January 21, 2005 confirmation order. Treating the defendants' motion for judgment on the pleadings as a motion for summary judgment, the Court dismissed the complaint in *Trico I*. In substance, the Court concluded that even if the plaintiffs could prove fraud, the Court could not restore the pre-confirmation *status quo* or protect innocent parties, and accordingly, could not vacate the confirmation order. The Court nevertheless granted the plaintiffs leave to replead in order to assert a damage claim. In *Trico II*, the Court granted the plaintiffs' motion for reargument, adhered to its original decision, and again granted leave to replead.

The plaintiffs then filed an Amended Complaint, (ECF Doc. # 33), demanding damages from the debtor-defendants under 11 U.S.C. § 1144 and under the separate theory that they had committed a "fraud on the court." The plaintiffs now seek leave to file the SAC for the purpose of joining Turbidy as a defendant on the latter claim.[3] The SAC also drops Trico

---

**2.** The charge of fraud relates to the following testimony:

> THE COURT: Do you recall whether your actual [experience] for the fourth quarter of 2004 was higher, lower or consistent with the projected results?
> THE WITNESS: In total [,] 2004 was consistent with our projections.
> THE COURT: Just the last quarter?
> THE WITNESS: It was fairly consistent, yes. It wasn't spot on dollar for dollar.
> THE COURT: It is higher or lower?
> THE WITNESS: I believe it was slightly higher.
> THE COURT: I'll take that answer they higher—they did better than they project-

ed. I understand their concern about disclosing in a court, particularly a preliminary analysis, but they're saying they did better. I think that answers your question.
> BY MR. SALSBERG:
> Q How much better?
> A Not materially.

(SAC, ¶ 32; *accord* Tr. 1/19, at 122–23.)

**3.** The plaintiffs have conceded that any claim against Turbidy based on 11 U.S.C. § 1144 would be time-barred. (Transcript of hearing, held Aug. 10, 2006, at 16–17) (ECF Doc. # 53.)

Marine International, Inc. as a defendant. The defendants oppose the motion, contending that the amendment is futile. In particular, they argue that the "fraud on the court" claim is legally insufficient, and the claims against Turbidy are time-barred.[4]

The defendants and/or the Court also questioned each plaintiff's standing. The defendants initially inquired whether Steven owned Trico common stock at the time of the confirmation hearing. He has since provided evidence that he acquired 44,000 shares of Trico common stock on January 14, 2005, prior to the confirmation hearing. Gloria, on the other hand, may never have owned any Trico common stock. The SAC alleges that Steven transferred warrants to Gloria, which were issued at the time that the shares were cancelled. In addition, the assignment does not answer whether Gloria acquired Steven's *in personam* fraud claim. *Cf. Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 151 (2d Cir.1995)(in absence of explicit assignment of fraud claim, assignor of contract claim may rescind or sue for damages for fraud and deceit)(quoting *Nearpark Realty Corp. v. City Investing Co.,* 112 N.Y.S.2d 816, 817 (N.Y.Sup.Ct.1952)); *Fox v. Hirschfeld,* 157 A.D. 364, 142 N.Y.S. 261, 263–64 (N.Y.App.Div.1913)(assignor of real estate contract retained claims for rescission and fraud).

## DISCUSSION

Rule 60(b) of the Federal Rules of Civil Procedure authorizes relief from a final order based, among other grounds, on "fraud on the court." It states, in pertinent part:

> "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.... This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, ... or to set aside a judgment for fraud upon the court."

██ "[F]raud upon the court is limited to that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Serzysko v. Chase Manhattan Bank,* 461 F.2d 699, 702 (2d Cir.), *cert. denied,* 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972); *accord Kupferman v. Consolidated Research & Mfg. Corp.,* 459 F.2d 1072, 1078 (2d Cir.1972); *Martina Theatre Corp. v. Schine Chain Theatres, Inc.,* 278 F.2d 798, 801 (2d Cir.1960). The main question raised by the defendants' opposition is whether Turbidy's perjury, without more, is sufficient to support a claim against him for "fraud on the court." The answer must begin with a consideration of the Supreme Court's decision in *Hazel–Atlas Glass Co. v. Hartford–Em-*

---

**4.** As already noted, the plaintiffs concede that the § 1144 damage claim against Turbidy is time-barred, and that claim will be dismissed. Thus, the proposed amendment is limited to the claim based on fraud on the court. The defendants acknowledge that there is no time limit governing such a claim; instead, they argue that it must be brought within a reasonable time. (*See Defendants' Memorandum of Law in Opposition to Motion to Amend the Amended Complaint,* dated July 10, 2006, at 14) (ECF Doc. # 44.) The timeliness of the amendment cannot be resolved as a matter of law, and hence, cannot be deemed futile on that basis.

*pire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944).

There, the lawyers for Hartford–Empire ("Hartford") wrote an article, which was signed by a supposed expert (Clarke), touting the revolutionary qualities of Hartford's product in order to support its patent application. *Id.* at 240. After the patent was granted, Hartford brought a patent infringement action against Hazel–Atlas, which the district court dismissed. *Id.* On appeal, Hartford's lawyers directed the Third Circuit to the false article, and the appellate court relied extensively on it in reversing the district court and remanding the case for trial. *Id.* Following remand, Hazel's investigators became suspicious and spoke to Clarke, who insisted that he had written the favorable article. *Id.* at 241–42, 64 S.Ct. 997. Shortly thereafter, Hazel capitulated, paid Hartford $1 million, and entered into a licensing agreement with Hartford. *Id.* at 243, 64 S.Ct. 997.

When the Circuit Court later learned the "sordid" truth, it nonetheless declined to vacate the earlier settlement. According to the Supreme Court, the Court of Appeals gave three reasons. First, the fraud was not newly discovered, *i.e.*, Hazel had not been diligent.[5] Second, the spurious article was not the primary basis of the Third Circuit's reversal, *i.e.*, the false article was not material. Third, the Court lacked the power to set aside the earlier decree because the term of the Court that had issued the earlier decree had expired. *Id.* at 243–44, 64 S.Ct. 997.

The Supreme Court reversed. Initially, the Court disposed of the jurisdictional issue, ruling that equity empowers a court, in appropriate circumstances, to set aside a judgment rendered during an earlier term based upon after-discovered fraud. *Id.* at 244, 64 S.Ct. 997. The Court also concluded that the parties' lack of diligence in discovering the fraud, though not to be condoned, was insufficient to defeat the claim. The underlying patent suit involved "issues of great moment to the public," and alleged tampering with the administration of justice and public institutions. *Id.* at 246, 64 S.Ct. 997. In addition, the article was material because Hartford's lawyers thought it was, used it to persuade the courts below, and could not dispute its effectiveness. *Id.* at 247, 64 S.Ct. 997.

Turning to the facts of the case, the Court described the egregious nature of Hartford's scheme. In the process, the Court distinguished Hazel's allegations from a simple charge of perjury, which would be insufficient to support a claim for "fraud on the court":

> "Every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments. *This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury.* Here, even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals. *Cf. Marshall v. Holmes, supra.* Proof of the scheme,

---

5. The opinion of the Court of Appeals recounted at length what Hazel's attorneys knew about fraudulent article by the time of the settlement, *see Hartford–Empire Co. v. Hazel–Atlas Glass Co.*, 137 F.2d 764, 765–68 (3d Cir.1943), and concluded that "[n]ot possibly can the information as to the facts attending the publication of the Clarke article be deemed to rate as after-discovered evidence so far as either Hazel–Atlas or Shawkee [Hazel's co-defendant] is concerned." *Id.* at 768.

and of its complete success up to date, is conclusive. *Cf. United States v. Throckmorton, supra.* And no equities have intervened through transfer of the fraudulently procured patent or judgment to an innocent purchaser. *Cf. Ibid; Hopkins v. Hebard,* 235 U.S. 287, 35 S.Ct. 26, 59 L.Ed. 232."

322 U.S. at 246, 64 S.Ct. 997 (emphasis added).

The Supreme Court's distinction between mere perjury and "fraud on the court" became the basis for the decision in *Gleason v. Jandrucko,* 860 F.2d 556 (2d Cir.1988). In that case, the plaintiff, a critic of local government, was arrested in connection with an armed robbery after two witnesses supposedly picked his picture out of a "photopack," and indicated that he could be a suspect. *Id.* at 557. The plaintiff was eventually released, and no charges were ever filed. *Id.*

The plaintiff subsequently sued certain police officials and the towns for unlawful arrest. *Id.* During pre-trial discovery, two police officers testified that one of the eyewitnesses to the bank robbery identified the plaintiff with 100% certainty, while the other identified him with 80% certainty. According to the officers, the witnesses were 90% certain that the plaintiff was the robber after viewing him during a post-arrest line up. *Id.* at 557–58. After unsuccessful cross-motions for summary judgment, the parties entered into a settlement, and the action was dismissed. *Id.* at 558.

The plaintiff subsequently learned that the police officers had perjured themselves during discovery. The eyewitnesses provided the plaintiff with affidavits stating that at the time they viewed the photographs, they were not certain that the plaintiff was the robber. In addition, the photographs were fuzzy, and when they

viewed him in the line up, they were absolutely sure that he was *not* the robber. *Id.*

The plaintiff then brought a second action to set aside the prior judgment on the ground that the settlement was procured through a fraud upon the court. *Id.* The district court dismissed the complaint, and the Second Circuit affirmed. Synthesizing the teachings of *Hazel–Atlas* and its progeny, including Second Circuit law, the Court of Appeals ruled that perjury and non-disclosure, without more, are insufficient to sustain a claim for "fraud on the court":

> As we previously have made clear, the credibility and veracity of a witness at issue in an original proceeding cannot be later challenged by way of an independent action. *See Serzysko,* 461 F.2d at 702 & n. 2; *see also Travelers Indemnity Co. v. Gore,* 761 F.2d 1549, 1552 (11th Cir.1985). After-discovered evidence of alleged perjury by a witness is simply not sufficient for a finding of "fraud upon the court." *Hazel–Atlas,* 322 U.S. at 245, 64 S.Ct. at 1001; *Serzysko,* 461 F.2d at 702. Similarly, allegations of nondisclosure during pretrial discovery do not constitute grounds for an independent action under Fed.R.Civ.P. 60(b). *See H.K. Porter Co. v. Goodyear Tire & Rubber Co.,* 536 F.2d 1115, 1118 (6th Cir.1976). Absent the type of fraud which "subvert[s] the integrity of the court itself, or is ... perpetrated by officers of the court," 7 Moore ¶ 60.33, at 360; *see Serzysko,* 461 F.2d at 702, the requisite interference with the judicial machinery cannot be established and an independent action for fraud on the court therefore will not lie. *In short, neither perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a single litigant.*

860 F.2d at 559–60 (emphasis added); *accord Transaero, Inc. v. La Fuerza Area Boliviana,* 24 F.3d 457, 460 (2d Cir.1994), *cert. denied,* 520 U.S. 1240, 117 S.Ct. 1843, 137 L.Ed.2d 1047 (1997); *New Card, Inc. v. Glenns,* No. 00 Civ. 4756(RMB), 2004 WL 540417, at *3 n. 4 (S.D.N.Y. March 18, 2004), *aff'd,* 137 Fed.Appx. 384, 2005 WL 1331337 (2d Cir.2005).

Applying these principles to the case before it, the Court of Appeals agreed with the lower court that the plaintiff had failed to allege "fraud on the court." Moreover, "an aggrieved party seeking relief under the saving clause of Rule 60(b) still must be able to show that there was no 'opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action.'" *Id.* at 560 (quoting *Serzysko,* 461 F.2d at 702 n. 2); *accord Weldon v. United States,* 70 F.3d 1, 5 (2d Cir.1995)("Only if Weldon had no opportunity to litigate the allegations of fraud on the court could this action go forward."); *cf. Leber–Krebs, Inc. v. Capitol Records,* 779 F.2d 895, 896–97 (2d Cir.1985)(sustaining claim based on "fraud on the court" where the defendant had submitted a false garnishee's statement in an earlier action that it did not hold property of, or owe a debt to, the earlier defendant, and as a result of the false statement, the district court denied the motion to confirm the attachment at a hearing that the garnishee did not attend). The plaintiff had the chance during the first lawsuit to challenge the police officers' accounts of the eyewitness testimony, and could have deposed the eyewitnesses. 860 F.2d at 559, 560.

These principles foreclose the Salsbergs' claims against Turbidy based on "fraud on the court." First, the claims against Turbidy rest solely on Turbidy's alleged perjury at the confirmation hearing, and the Salsbergs do not allege that an officer of the Court perpetrated the fraud. Second, the SAC fails to allege that Steven had *no* opportunity to demonstrate the falsity of Turbidy's testimony. Indeed, Steven raised the issue of the actual fourth quarter results during his interrogation of Turbidy, who he called as his own witness, and had the chance to expose his lies. He was simply not prepared to meet Turbidy's allegedly false testimony.

It is true, in this regard, that these cases moved swiftly toward confirmation, and if Salsberg had more time, he *might* have had a better chance to unearth information useful in exposing Turbidy's alleged perjury. But the same argument can be made in every case. If it were the law, courts would constantly have to deal with independent actions collaterally attacking the testimony in a different case. Moreover, Steven could have sought expedited discovery to take Turbidy's deposition prior to the confirmation hearing, or issued a trial subpoena directing Turbidy to produce the actual fourth quarter results at the confirmation hearing.

The foregoing is sufficient to dispose of the pending motion, and it is therefore unnecessary to address the other arguments raised by counsel. The motion for leave to amend is denied, and the parties are directed to schedule a conference to consider further proceedings aimed at resolving the question of Gloria's standing and scheduling a trial on the merits.

So ordered.

### OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR REARGUMENT

The Court's *Opinion and Order Denying Plaintiffs' Motion for Leave to Amend the Complaint,* dated Nov. 22, 2006 (the "*Opinion* ")(ECF Doc. # 59) denied the plaintiffs' motion for leave to file and serve a Second Amended Complaint (the "SAC"). The proposed pleading sought to

add Trevor Turbidy, Trico's former chief financial officer and present chief executive officer, as a defendant on a claim alleging "fraud on the court." The plaintiffs contended that Turbidy committed perjury at the confirmation hearing when he testified that Trico's 2004 fourth quarter results were not materially different from the projections in the disclosure statement.

The *Opinion*, citing two reasons, concluded that the SAC failed to state a claim upon which relief could be granted:

> First, the claims against Turbidy rest solely on Turbidy's alleged perjury at the confirmation hearing, and the Salsbergs do not allege that an officer of the Court perpetrated the fraud. Second, the SAC fails to allege that Steven had *no* opportunity to demonstrate the falsity of Turbidy's testimony. Indeed, Steven raised the issue of the actual fourth quarter results during his interrogation of Turbidy, who he called as his own witness, and had the chance to expose his lies. He was simply not prepared to meet Turbidy's allegedly false testimony.

(*Opinion*, at 11–12.)

The plaintiffs then made this motion for reargument. They insist that they did argue that Turbidy was an "officer of the court," and I overlooked that argument. In truth, they never made the argument they now think they made. Accordingly, the motion for reargument is denied.

## DISCUSSION

### A. Standard for Reargument

Local Bankruptcy Rule 9023–1(a) governs motions for reargument or reconsideration. It states:

> A motion for reargument of a court order determining a motion shall be served within 10 days after the entry of the Court's order determining the original motion, or in the case of a court order resulting in a judgment, within 10 days after the entry of the judgment, and, unless the Court orders otherwise, shall be made returnable within the same amount of time as required for the original motion. The motion shall set forth concisely the matters or controlling decisions which counsel believes the Court has not considered. No oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be re-argued orally.

■ The movant must show that the court overlooked controlling decisions or factual matters "that might materially have influenced its earlier decision." *Anglo American Ins. Group, P.L.C. v. CalFed Inc.*, 940 F.Supp. 554, 557 (S.D.N.Y.1996)(quoting *Morser v. AT & T Info. Sys.*, 715 F.Supp. 516, 517 (S.D.N.Y. 1989)); *accord Banco de Seguros del Estado v. Mut. Marine Offices, Inc.*, 230 F.Supp.2d 427, 428 (S.D.N.Y.2002), *aff'd*, 344 F.3d 255 (2d Cir.2003); *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y.1999); *Farkas v. Ellis*, 783 F.Supp. 830, 832–33 (S.D.N.Y.), *aff'd*, 979 F.2d 845 (2d Cir.1992). "Alternatively, the movant must demonstrate the need to correct a clear error or prevent manifest injustice." *Griffin Indus.*, 72 F.Supp.2d at 368 (internal quotation marks and citations omitted); *accord Banco de Seguros del Estado*, 230 F.Supp.2d at 428.

■ The rule permitting reargument is strictly construed to avoid repetitive arguments on issues that the court has already fully considered. *Griffin Indus.*, 72 F.Supp.2d at 368; *Monaghan v. SZS 33 Assocs., L.P.*, 153 F.R.D. 60, 65 (S.D.N.Y. 1994); *Farkas*, 783 F.Supp. at 832. In addition, the parties cannot advance new facts or arguments; a motion for reargument is not a vehicle for "presenting the

case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir.1998)(discussing Rule 59); *accord Griffin Indus.*, 72 F.Supp.2d at 368 (discussing motions for reargument).

## B. The Motion For Leave To Amend

When the plaintiffs moved for leave to file and serve the SAC, Trico opposed the motion on several grounds. Trico argued, *inter alia*, that the "fraud on the court" claim alleged against Turbidy was futile, or legally insufficient, essentially because "fraud on the court" did not cover an isolated instance of perjury by a witness. (*Defendants' Memorandum of Law in Opposition to Motion to Amend the Amended Complaint*, dated July 10, 2006, at 10) ("[T]he accusation that a witness made misstatements in court is simply insufficient to bring a claim for fraud on the court.")(ECF Doc. # 44.) Trico's opposition did not address the "officer of the court" element of the claim.

The plaintiffs nevertheless understood that Trico had raised it. In reply, they maintained that "Trico's arguments regarding ... whether or not court officers are implicated ... are irrelevant because they neglect the procedural context of the confirmation process in which the alleged fraud-on-the-court took place as well as a debtor's statutory obligations under the bankruptcy code in obtaining confirmation of a plan." (*Plaintiff's Reply Memorandum of Law*, dated July 26, 2006, at 6)("*Plaintiff's Leave Reply*")(ECF Doc. # 49.) According to the plaintiffs, lying during the confirmation process was what made the difference, and "fraud on the court" would, therefore, cover a fraudulent misstatement by a plan proponent that was not connected with the debtor or any fiduciary.

Indeed, "[t]he confirmation process and the confirmation hearing are distinct from an adversary proceeding and thus Trico's analysis is fundamentally flawed and the cases referenced inapplicable." (*Id.*) Accordingly, "fraud on the court" connected to the confirmation process can be established "without the necessity and notwithstanding any analysis relating to *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, and its progeny (which generally related to adversary proceedings and pre-trial discovery)." (*Id.* at 8)(footnote omitted.)

Even when the plaintiffs addressed *Hazel–Atlas*, they disregarded the "officer of the court" requirement. They discussed only two elements or dimensions: the gravity of the fraud and the other party's diligence. They ignored the identity of the perpetrator. (*Id.*)

The *Opinion* implicitly rejected the distinction that the plaintiffs attempted to draw between confirmation hearings and adversary proceedings. The *Opinion* discussed *Hazel–Atlas* and its progeny, and based its ruling on the requirements for "fraud on the court" enunciated by those cases, which included a substantial body of Second Circuit law. The Court concluded that the claim against Turbidy was legally insufficient, *inter alia*, because he was not an "officer of the court," an issue the plaintiffs expressly viewed as *irrelevant*.

## C. The Reargument Motion

██ Despite their prior disclaimer, the plaintiffs now contend that I overlooked their earlier arguments that Turbidy was an "officer of the court" because he was the chief financial officer of Trico who, as debtor in possession, was an "officer of the court," and that an isolated perjury by an "officer of the court" rises to the level of "fraud on the court." (*See Plaintiffs' Memorandum of Law in Support of Motion for Reargument*, dated Dec. 4, 2006,

at 2–3) (*"Plaintiffs' Reargument Memorandum"*) (ECF Doc. # 63.) Suffice it to say, the plaintiffs never made these arguments. Perhaps the best proof is that the principal decisions they now cite to show that the debtor in possession and/or its officers are "officers of the court", *Gumport v. China Int'l Trust & Inv. Co. (In re Intermagnetics America, Inc.)*, 926 F.2d 912 (9th Cir.1991), *Nicholas v. United States*, 384 U.S. 678, 690, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), *Official Committee of Unsecured Creditors v. H.B. Michelson (In re H.B. Michelson )*, 141 B.R. 715 (Bankr.E.D.Cal.1992) and *Tri–Cran, Inc. v. Fallon (In re Tri–Cran, Inc.)*, 98 B.R. 609 (Bankr.D.Mass.1989), (*see Plaintiffs' Reargument Memorandum,* at 3–4), were not cited or discussed in their reply to Trico's opposition to the motion for leave to amend.[1] If the plaintiffs did not cite these decisions, they are hard-pressed to show that I overlooked them.

The plaintiffs point to only one reference to an "officer of the court" in the entire and lengthy record made on the motion to amend. It occurred mid-way through the August 10, 2006 argument on the plaintiffs' motion, but arose in a different context. Mr. Salsberg reiterated the argument that a debtor in possession has a greater duty of candor in connection with the confirmation hearing. (Transcript of hearing, held Aug. 10, 2006, at 39)(ECF Doc. # 53.) In support, he referred to the quotation from the *Tenn–Fla* decision discussed in the earlier footnote.[2] In response to the Court's question, he implied that Trico should have called Turbidy as its own witness to clarify the facts in the disclosure statement rendered inaccurate by the passage of time, (*id.* at 40–41), and this greater duty of candor arose from the debtor in possession's status as an "officer of the court." (*Id.* at 42.)

This was the extent of the reference to a concept that the plaintiffs contend was overlooked. It was never briefed. Moreover, the reference was to the status of Trico. The plaintiffs never stated or implied, as they do now, that Turbidy was "an officer of the court" because he was the chief financial officer of Trico. Accordingly, the motion is denied. The parties are directed to schedule a status conference for the purpose of fixing deadlines for the completion of any remaining fact and expert discovery, and for the trial of this matter.

So ordered.

---

1. *Michelson* was cited in a quotation from *Tenn–Fla Partners v. First Union Nat'l Bank (In re Tenn–Fla Partners )*, 229 B.R. 720, 730–31 (W.D.Tenn.1999), *aff'd*, 226 F.3d 746, 750 (6th Cir.2000). (*See Plaintiff's Leave Reply,* at 6 & n. 15.) The quotation did not deal with the status of debtors in possession or their officers as "officers of the court." Instead, it addressed the duty of candor surrounding a confirmation proceeding. The breach of a heightened duty of disclosure may make a fraud finding more likely, but it does not follow that (1) a debtor in possession is an "officer of the court" within the meaning of the requirements for "fraud on the court,", (2) the officers of the debtor in possession are also "officers of the court," or (3) every isolated perjury by an "officer of the court" automatically becomes converted into a "fraud on the court," propositions central to the plaintiffs' current argument.

2. The transcript referred to the decision as "Tenth Law."